# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
August 7, 2018

Lyle W. Cayce
Clerk

No. 17-41004

In the matter of: HUMBERTO SAENZ, JR., formerly doing business as Pizza Patrón, Incorporated; formerly doing business as Estrella Ventures, Incorporated, doing business as Pizza Patrón, also known as Humberto Saenz, formerly doing business as Armar Enterprises; and DELMA JEAN SAENZ, formerly known as Delma Jean Ortiz,

Debtors.

HUMBERTO SAENZ, JR., and ESTRELLA VENTURES, L.L.C.,

Appellants,

v.

JOSE MARIA GOMEZ,

Appellee.

Appeals from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, and JONES and ENGELHARDT, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appellants Humberto Saenz, Jr. and Estrella Ventures, LLC appeal the bankruptcy court's decision, affirmed by the district court, holding them liable for a $412,500.00 non-dischargeable judgment stemming from Appellee's fraudulent misrepresentation, breach of contract, and common law fraud

No. 17-41004

claims.    For the reasons explained below, we AFFIRM the district court's affirmance of the bankruptcy court's judgment.

## I.  Background

On September 7, 2004, Appellant Humberto Saenz, Jr. ("Saenz") entered into a Franchise Development Agreement with Pizza Patrón, which granted him the exclusive right to develop Pizza Patrón restaurants within a certain development area.[1]  Saenz signed the document in his capacity as President of Estrella Ventures, LLC ("Estrella"), a company he created for the purpose of operating Pizza Patrón franchises.  The Franchise Development Agreement prohibits voluntary transfers of the franchise without the prior written consent of the franchisor, explicitly providing any such transfer "will be ineffective … and will constitute a default" under the Agreement.

By 2009, Saenz owned at least four Pizza Patrón locations, which he financed with three loans from the International Bank of Commerce ("IBC"). The three loans, in the principal amount of $480,500.00, were cross-collateralized and secured by blanket liens over the accounts receivable, inventory, equipment, furniture, and fixtures for three of the four locations, including the Rio Grande City location.  By November 2009, Saenz owed IBC $335,880.00.

Jose Maria Gomez, individually, and JMG Ventures, LLC (collectively, "Gomez" and "Appellee") approached Saenz about purchasing a Pizza Patrón franchise in 2009.    Gomez was introduced to Saenz by a close friend, Jesús Ortiz ("Ortiz"), Saenz's brother-in-law and a manager at a separate Pizza Patrón location, who told Gomez that Saenz was the corporate representative

---

[1] Although "development area" is not defined in the Franchise Development Agreement, Saenz testified it is comprised of the territory from "Starr County, Roma, all the way to Alamo and bordered with the actual Mexican border."

No. 17-41004

for Pizza Patrón in the South Texas region. Although Saenz denies it, Gomez testified that Saenz made the same representation to him several times.

Gomez and Saenz reached a preliminary agreement for Gomez to purchase the Rio Grande City Pizza Patrón franchise for $350,000.00 in August 2009. To facilitate the purchase, Gomez applied for a Small Business Administration loan from Lone Star National Bank ("Lone Star") for $287,200.00. In connection with the loan application, Lone Star requested certain documentation, which Gomez asked Saenz to provide. The documentation included profit and loss income statements whose accuracy is called into question based on discrepancies in the documentary evidence.[2] For example, a Net Sales Report lists sales in an amount significantly lower than the income statements, and the October and September income statements list identical numbers for the cost of goods sold – a near impossibility. Additionally, the income reported in the profit and loss statements does not comport with the tax returns Saenz was required to provide for Estrella Ventures.

In order to obtain the loan from Lone Star, Gomez also had to provide a Certification of No Change or Non-Material Change. In 2005, Saenz had received a Certification of No Change or Non-Material Change in connection with his original purchase of the Rio Grande City franchise. Although Saenz denied sending the document, the Certification received by Lone Star was dated November 10, 2009 and was signed by Charlotte Hargrove ("Hargrove"), the authorized representative for Pizza Patrón, Inc. A comparison of this 2009 Certification with the previous 2005 Certification confirms the Certification

---

[2] Saenz testified that he prepared the income statements with the help of Elizabeth Gauna ("Gauna"), an IBC banker; Gauna denies Saenz ever approached her for help with these statements. As the bankruptcy court noted, an Activity Summary created by Gauna corroborates her version of events, which includes the fact that Saenz did not tell her or IBC about the sale of the Rio Grande City location until October 29, 2009.

3

provided to Lone Star was copied from the earlier document, with only the date being altered. Indeed, Hargrove's signature and handwriting are identical in both documents, and even share the same copying imperfections.

By October 2009, Gomez and Estrella Ventures entered into a Purchase-Sale Agreement whereby Estrella Ventures agreed to sell all equipment and inventory for the Rio Grande City location for $350,000.00, a purchase price just over the amount Saenz owed IBC.[3] Neither Gomez nor Saenz obtained written consent from Pizza Patrón approving the transfer. But the Rio Grande City location had to continue making royalty payments to Pizza Patrón, so to circumvent this obstacle Saenz asked Gomez for his account information at Lone Star in order to send Pizza Patrón the money directly. Saenz then faxed an authorization form to Pizza Patrón that contained Gomez's account number and wrote, "I need to change my acct. because existing bank is returning some items." Saenz admitted this was a lie and claimed he "wasn't ready" for Pizza Patrón to find out about the sale of the store to Gomez.[4]

Although Saenz testified that he received all but $20,000.00 of the purchase price, Saenz told Gauna the sales proceeds only totaled $150,000.00. This caused IBC to allow Saenz to keep the supposed remaining balance of $66,777.00 after he paid down the loan on the store. Gauna testified she only found out the purchase price was actually $350,000.00 a few weeks before trial, and had she known the true amount of the purchase price, she would have paid off the two remaining loans because of their cross-collateralized nature. Saenz

---

[3] The Purchase-Sale Agreement also contemplates that Estrella Ventures would transfer the lease and franchise in exchange for a $9,000 transfer fee, but Gomez never paid a $9,000 fee beyond the $350,000 purchase price.

[4] Gomez also testified that Saenz discouraged Gomez from attending any of the training sessions at the Pizza Patrón headquarters in Dallas, even though Pizza Patrón's franchise agreement requires the franchisee and the store's general manager attend training before opening a store for business.

ultimately defaulted on the two remaining loans, and as a result IBC lost nearly $200,000.00.

Gomez's loan from Lone Star closed on February 8, 2010, and he took possession of the Rio Grande City store the following month. During Gomez's tenure, the numerical grade the store received from Pizza Patrón corporate improved significantly.[5]   But in November 2010, Gomez learned he had developed an eye abnormality whose condition was exacerbated by the heat in the kitchen. Together with this health concern, the fact that the actual net sales of the restaurant were in decline led Gomez to close the store in March 2011, after he had already lost approximately $70,000. When Gomez relayed his decision to Saenz, Saenz told him he had already found a new tenant for the building.

Upon receiving the keys to the store from Gomez, Saenz delivered all of the restaurant's equipment to Lone Star, which put it up for auction. Saenz told Rikk Grant ("Grant"), a project manager at Pizza Patrón corporate, that the Rio Grande City stored closed on March 7, 2011 because of a failure in the roof structure. Emails between Saenz and Grant show Saenz told Pizza Patrón he had to close the store for roof and floor repairs; in truth, Saenz had cleared out all of Gomez's equipment and installed new equipment. Saenz was unable to corroborate the alleged needed repairs and never informed Pizza Patrón of the real reason the store closed and the equipment was replaced. Instead, Saenz reopened the store for business under the Pizza Patrón name.[6]

---

[5] Although the parties dispute the reason why Gomez did not personally attend any of the corporate inspections of the Rio Grande City location, Gomez testified that Saenz informed him franchise owners could not attend the inspections and that Saenz would attend in his stead.

[6] After sales continued to decline, Saenz abandoned or sold the restaurant on October 8, 2012.

No. 17-41004

On September 11, 2011, Appellee filed suit against Appellants, alleging causes of action for (1) fraudulent misrepresentation, (2) breach of contract, (3) common law fraud, and (4) conversion.[7]   After Saenz filed a Chapter 7 bankruptcy petition on August 27, 2013, the lawsuit was removed to bankruptcy court on November 19, 2013, and Gomez commenced an adversary proceeding seeking an exception to discharge under 11 U.S.C. § 523.   The bankruptcy court held a consolidated trial on Adversary Proceedings on February 17, 2015, issued a Memorandum Opinion, and entered judgment on July 22, 2015.   The bankruptcy court found in favor of Appellee on its fraudulent misrepresentation/common law fraud claims, denied relief on the breach of contract claim, and allowed exception from discharge.

After entering judgment in the amount of $412,500.00 against Appellants, Appellants appealed.   On September 26, 2016, the district court remanded the case to consider whether a bankruptcy court may issue a final judgment that liquidates a state law claim excepted from discharge in the underlying bankruptcy case.   The bankruptcy court issued a Memorandum Opinion Following Limited Remand on December 19, 2016, and after a hearing, the district court entered its judgment affirming the bankruptcy court on September 28, 2017.   Appellants now appeal the district court's affirmance of the bankruptcy court judgment.

## II.  Standard of Review

We review a district court's affirmance of a bankruptcy court's decision by applying the same standard of review to the bankruptcy court's findings of fact and conclusions of law that the district court applied.   *See Ad Hoc Grp. of*

---

[7] Appellee's Original Petition and First Amended Original Petition also named Lone Star Bank, IBC, and Pizza Patrón, Inc. as defendants. Pizza Patrón was dismissed, the claims against Lone Star Bank were severed with a judgment issued in its favor in a separate adversary proceeding, and the bankruptcy court granted IBC's motion for judgment on partial findings.

*Vitro Noteholders v. Vitro S.A.B. de C.V. (In re Vitro S.A.B. de C.V.)*, 701 F.3d 1031, 1042 (5th Cir. 2012) (citing *United States v. Martinez (In re Martinez)*, 564 F.3d 719, 725-26 (5th Cir. 2009)).  A bankruptcy court's findings of fact are subject to review for clear error, and its conclusions of law are reviewed *de novo.  See Gen. Elec. Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 372 (5th Cir. 2005).

## III.  Jurisdiction

Before reaching the substantive issues presented in this appeal, we address whether the bankruptcy court had jurisdiction, in light of *Stern v. Marshall*, 564 U.S. 462, 131 S. Ct. 2594 (2011), to issue a final judgment liquidating a state law claim excepted from discharge in the underlying bankruptcy case.  *See In re U.S. Brass Corp.*, 301 F.3d 296, 304-06 (5th Cir. 2002).   In its Memorandum Opinion Following Limited Remand, the bankruptcy court found it had the jurisdiction and constitutional authority to enter a final judgment liquidating a state law claim from discharge because (1) the case involves "core" matters, thereby authorizing the bankruptcy judge to hear, determine, and enter final judgment on a claim, *see Exec. Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2171 (2014); (2) bankruptcy courts have both subject matter jurisdiction and the constitutional authority to liquidate state law claims in dischargeability actions, *see Morrison v. W. Builders of Amarillo, Inc. (In re Morrison)*, 555 F.3d 473, 479 (5th Cir. 2009); and (3) 11 U.S.C. §§ 523(a) and 157(b)(2)(I) allow the determination of the validity and amount of a non-dischargeable debt where a debt is directly intertwined with the determination of discharge.  The bankruptcy court determined the limitations on a bankruptcy court's jurisdiction articulated in *Stern* are inapplicable here.  The bankruptcy court also concluded that even if liquidation of the claims in this dischargeability proceeding was not a "core" matter, the court had the authority to hear, determine, and enter its final order and

judgment because it had Appellants' implied consent.   *See*  28 U.S.C. § 157(c)(2); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1948 (2015). The district court adopted the same analysis in its Order of Dismissal, stating the bankruptcy court had jurisdiction to enter judgment and, alternatively, determining the parties consented to jurisdiction.

Because this court finds all parties consented to the bankruptcy court's issuance of the final judgment, we do not address *Stern* or consider a new rule concerning a bankruptcy court's constitutional authority to issue a final judgment that liquidates a state law claim excepted from discharge.   *See Matter of Delta Produce, L.P.*, 845 F.3d 609, 616-17 (5th Cir. 2016); *see also Shamloo v. Miss. State Bd. of Trs. of Insts. of Higher Learning*, 620 F.2d 516, 524 (5th Cir. 1980) ("[C]ases are to be decided on the narrowest legal grounds available.").   The Supreme Court has recognized "allowing bankruptcy litigants to waive the right to Article III adjudication of *Stern* claims does not usurp the constitutional prerogatives of Article III courts."   *Sharif*, 135 S. Ct. at 1944-46.   Such consent may be either express or implied, so long as it is knowing and voluntary; the determination whether a party consented to the bankruptcy court's jurisdiction requires "a deeply factbound analysis of the procedural history" in the proceeding.   *Id.* at 1948-49.   The bankruptcy court undertook that analysis, relying on facts such as Appellants' (1) submission of a pre-trial statement in which they listed no jurisdictional issues; (2) representation by experienced bankruptcy counsel; and (3) voluntary participation in the proceedings, including seeking affirmative relief by filing Rule 12(b)(6) motions and not expressing any limitations on its consent throughout the trial.   We have reviewed the aforementioned facts for clear error and have carefully considered the arguments advanced by the parties in their briefs, and find no error in the conclusion that all parties gave implied consent, thus vesting the bankruptcy court with jurisdiction to issue a final

judgment.  *See Matter of Delta Produce, L.P.*, 845 F.3d at 617 (holding the bankruptcy court had jurisdiction to make a final judgment on a PACA claim by virtue of the parties' consent); *Wellness Int'l Network, Ltd. v. Sharif*, 617 F. App'x 589, 590-91 (7th Cir. 2015) (holding on remand from the Supreme Court that the appellant forfeited a *Stern* claim because he raised it for the first time when challenging the bankruptcy court order in his reply brief in the district court).

## IV.  Discussion

Appellants' remaining challenges to the judgment are to the sufficiency of the evidence supporting a finding of fraud.  Appellants claim the bankruptcy court reversibly erred in finding material representation, justifiable reliance, and proximate causation were satisfied.  Appellants also argue the bankruptcy court erred in finding certain elements of § 523(a)(2)(A) non-dischargeability were satisfied.

### A. <u>Fraud</u>

Appellants contend the bankruptcy court erred in finding Saenz and Estrella committed fraud on the basis Appellee did not satisfy all elements of Texas common law fraud.  The elements of common law fraud are:

> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001).

The parties' positions are in stark contrast: Appellants claim "no evidence" was presented on the reliance or material representation elements and the facts presented are insufficient to support a finding of proximate cause, whereas Appellee asserts the elements of justifiable reliance and proximate

cause were clearly established and find support in the evidence. We accept the bankruptcy court's findings of fact as to each of these elements unless we are left with the "definite and firm conviction that a mistake has been committed." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 855 (1982).

In reaching its findings on the common law fraud elements, the bankruptcy court made several credibility determinations, considering Saenz's testimony and contrasting it to the testimony of Gomez and other witnesses. Saenz's version of events, often deemed "implausible," differed in significant respects from that of Gomez, and Gomez's found support in other testimony and evidence. *See In re Anderson*, 936 F.2d 199, 204 (5th Cir. 1991) ("The bankruptcy court is in the best position to judge the credibility of any witness who testifies under oath before it…."). The bankruptcy court noted that Saenz "lied frequently whenever it suited him" and his testimony was littered with discrepancies, which led the court to place little weight on his testimony.[8] By contrast, Gomez's version of events was "much more plausible" and there were no discrepancies in Gauna's testimony, which was "fully supported by the documentary evidence." Based on this careful weighing of witness testimony, the bankruptcy court resolved two central factual disputes regarding material misrepresentation. First, the September income statement Saenz provided to Gomez, which was then provided to Loan Star, was false, as Saenz's explanations for the numerical discrepancies in the document were problematic and unacceptable. Second, the court found Saenz represented to Gomez he was an employee of Pizza Patrón corporate. The court thus credited Gomez's testimony, documentary evidence such as IBC reports, and Saenz's own conduct – namely, his lies concerning the royalty payment made from Gomez's account, his forging of a Certification of No Change, and his keeping

---

[8] Indeed, the bankruptcy court created a minute entry in the record, recommending Saenz be criminally indicted on account of the egregious fraud he committed.

Gomez away from training and franchise inspections. All these actions were critical in persuading Gomez that Saenz was a member of Pizza Patrón corporate.

This court defers to the bankruptcy court's determinations of witness credibility. *See Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 701 (5th Cir. 2003); *see also Matter of Martin*, 963 F.2d 809, 814 (5th Cir. 1992) ("If the bankruptcy judge finds one version of events more credible than other versions, this Court is in no position to dispute the finding."). A careful review of the record confirms that the bankruptcy court's findings as to the two factual disputes concerning Saenz's misrepresentations are not clearly erroneous. While Appellants insist "no evidence" was introduced that Saenz represented he was a corporate representative of the franchisor, the record – replete with Saenz's own admissions of misstatements and testimony from witnesses Ortiz, Gomez, and Gauna confirming the falsehoods – shows otherwise. Additionally, there is ample evidence supporting the bankruptcy court's conclusion that the income statements were false and did not reflect the true financial condition of the Rio Grande restaurant.

Appellee was required to show he justifiably relied on the two misrepresentations. *See Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001). The reliance element does not require a plaintiff to demonstrate reasonableness, yet a person may not justifiably rely on a representation if "there are 'red flags' indicating such reliance is unwarranted." *AT&T Universal Card Serv. Inc. v. Mercer (In re Mercer)*, 246 F.3d 391, 418 (5th Cir. 2001) (citation omitted). Appellants argue red flags existed in the form of Gomez's subjective trust in Ortiz, Gomez's past experience in business matters, and the commercial nature of the franchise transaction. The bankruptcy court commented on these circumstances, noting the "question of justifiable reliance depends heavily on the relationship

11

between the parties and their relative sophistication," but ultimately found Gomez's reliance on Saenz's misrepresentations was justifiable.  Not only did Saenz make credible representations, he also went to great lengths, including falsifying bank documents, to prevent Gomez from questioning his authority to effectuate the franchise transfer.  Without any reason for Gomez to question Saenz, his income statements, and his claim that he worked for Pizza Patrón corporate, the bankruptcy court concluded the weight of the evidence supported justifiable reliance.  We do not have a definite and firm conviction that a mistake has been committed in this respect.

Appellants also challenge the bankruptcy court's finding of proximate causation, boldly stating "no evidence" was presented on this element of fraud.  Under Texas law, proximate cause requires cause in fact and foreseeability.  *See In re Air Crash at Dallas/Fort Worth Airport*, 720 F. Supp. 1258, 1279 (N.D. Tex. 1989) (citation omitted), *aff'd*, 919 F.2d 1079 (5th Cir. 1991), *cert. denied*, 502 U.S. 899, 112 S. Ct. 276 (1991).  Cause in fact is established if the injury would not have occurred "but for" the wrongful act or omission.  *Id.* (citations omitted).  Foreseeability "requires that the injury [complained of] be of such a general character as might reasonably have been anticipated, and that the injured party should be so situated with relation to the wrongful act that injury to him . . . might reasonably have been foreseen."  *Id.*  (citations omitted); *see also Bykowicz v. Pulte Home Corp.*, 950 F.2d 1046, 1054-55 (5th Cir. 1992).  The bankruptcy court found proximate cause satisfied because had Gomez seen the true numbers instead of the false ones on the income statement, he would not have closed the deal, and "it was clearly foreseeable that providing a false income statement could induce someone to invest and subsequently lose the investment."  The bankruptcy court also found Saenz's misrepresentation about his status at Pizza Patrón was a "critical factor" in Gomez's decision to purchase the restaurant, and "[i]t was foreseeable that a

misrepresentation designed to induce Gomez into purchasing the restaurant could result in injury."

According to Appellants, the proximate cause for Gomez's damages was not Saenz's misrepresentations, which "at most, did nothing more than furnish a condition that made Gomez's injury possible," but the failure of the business itself. Yet, there would have been no purchase of the business or its subsequent failure had it not been for Saenz's misrepresentations, which induced Gomez to purchase the Rio Grande location. The bankruptcy court made clear that but for the misrepresentations regarding the inflated profits in the income statements and Saenz's corporate status with the franchisor, Gomez would not have sought the loan with Lone Star or completed the purchase of the restaurant. There is no error in the bankruptcy court's conclusion Gomez's injuries were not only foreseeable, but directly attributable and proximately caused by Saenz's misrepresentations.

B. Non-dischargeability

In finding the judgment amount of $412,500.00 was excepted from discharge, the bankruptcy court determined Appellee met all elements of § 523(a)(2)(A).[9]  Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud. . . other than a statement respecting the debtor's or an insider's financial position." 11 U.S.C. § 523(a)(2)(A) (alterations added); *See also* 11 U.S.C. § 523(a)(2)(B). A creditor must prove its claim of non-dischargeability by a preponderance of the evidence. *In re Mercer*, 246 F.3d 391, 403 (5th Cir. 2001). The elements of "actual fraud" under § 523(a)(2)(A) generally correspond with the elements of common law fraud in

---

[9] The $412,500.00 amount reflects the sum of the actual damages ($330,000.00) plus exemplary damages ($82,500.00).

Texas, and include: (1) the debtor made a representation; (2) the debtor knew the representation was false; (3) the representation was made with intent to deceive the creditor; (4) the creditor actually and justifiably relied on the representation; and (5) the creditor sustained a loss as a proximate result. *Id.* at 403; *see also In re Ritz*, 832 F.3d 560, 565 (5th Cir. Aug. 10, 2016) (noting that since *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016), the term "actual fraud" in section 523(a)(2)(A) encompasses forms of fraud that can be effected without false representation). For the reasons set forth above, Saenz's representations in the income statement and that he worked for Pizza Patrón, both of which he knew were false, were made to induce Gomez to purchase the restaurant, and proximately caused Gomez's injury after Gomez justifiably relied on them. The bankruptcy court accordingly found all elements of Appellee's § 523(a)(2)(A) claim were satisfied.[10]

Appellants' arguments concerning the bankruptcy court's ruling on the non-dischargeability claim are but one permissible – albeit stretched – view of the evidence. Appellants state the record is "devoid" of evidence Saenz's representations proximately caused Gomez damages, claiming Gomez's loss stemmed from the poor performance of the Rio Grande location and Pizza Patrón's authorization could have been secured after Gomez assumed control of the restaurant. Appellants further argue there is no evidence to support the conclusion Gomez's reliance on Saenz's representations was justified; they go so far as to blame Gomez for not having been diligent.

The bankruptcy court's account of the evidence is not clearly erroneous in light of the record viewed as a whole. *See In re Acosta*, 406 F.3d 367, 373 (5th Cir. 2005) ("As long as there are two permissible views of the evidence, we

---

[10] The bankruptcy court noted exceptions to discharge based on written financial statements fall under § 523(a)(2)(B) and explicitly stated the income statements could not be a basis for the § 523(a)(2)(A) claim.

will not find the factfinder's choice between competing views to be clearly erroneous.") (citation omitted).  The bankruptcy court based its findings on Saenz's lack of credibility as compared to the more credible and consistent testimony of Gomez and Gauna; the latter testimony was supported by documentary evidence and lacked discrepancies.   For the same reasons detailed above, we find the bankruptcy court reasonably concluded Appellee met its burden of proof as to the two misrepresentations Saenz made prior to the sale of the restaurant:   Saenz provided Gomez with a false income statement and held himself out as an employee of Pizza Patrón corporate.  Both representations were made with the intent to induce Gomez to purchase the restaurant, and either or both proximately caused Gomez injury.  Without the income statement, Gomez would not have felt secure in taking out a loan to purchase the restaurant; and without Saenz's claim he worked for Pizza Patrón corporate, Gomez would not have believed he had the required authorization to buy and operate the franchise.  Gomez's own experience in business matters and financial acumen support the finding that his reliance was justified, as he had no reason to question Saenz's misrepresentations.

The bankruptcy court's findings of fact will not be set aside unless they are clearly erroneous and this court is "left with the definite and firm conviction that a mistake has been made." *Otto Candies, L.L.C. v. Nippon Kaiji Kyokai Corp.*, 346 F.3d 530, 533 (5th Cir. 2003) (internal quotation marks and citation omitted).  A review of the record confirms the bankruptcy court's finding that Appellants' actions satisfy the elements of Texas common law fraud and 11 U.S.C. § 523(a)(2)(A).  We cannot say the bankruptcy court clearly erred in rendering its non-dischargeable judgment or that the district court erred in affirming the bankruptcy court.

**AFFIRMED**.