# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 15, 2020

Lyle W. Cayce
Clerk

No. 20-50348

In the Matter of: Steven Jeffrey Cyr

Johnny Lee White, M.D.,

*Appellant,*

*versus*

Stephen Jeffrey Cyr,

*Appellee.*

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:18-CV-1287

Before Davis, Stewart, and Oldham, *Circuit Judges.*
Per Curiam:*

Dr. White agreed to provide pain management services to patients of Orthopaedic & Spine Institute L.L.C. ("OSI"). OSI agreed to pay him fifty percent of gross revenue collected from patients and third-party payers. Dr.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-50348

Cyr owns OSI. When OSI failed to pay Dr. White, he sued both OSI and Dr. Cyr in state court. Dr. Cyr filed for bankruptcy, and a federal court stayed the state court proceedings accordingly. Dr. White then filed a complaint to have Dr. Cyr's debt to him declared non-dischargeable under 11 U.S.C. § 523(a). The bankruptcy court dismissed Dr. White's complaint, and the district court affirmed that dismissal. WE AFFIRM.

## I. FACTS AND PROCEDURAL HISTORY

Dr. Johnny White is an anesthesiologist who owned his own practice, Disability and Pain Consultants of Texas, P.A.[1] His practice's primary location was in Dallas, Texas. He and his practice established relationships with healthcare organizations throughout the state of Texas. The organizations referred patients to Dr. White, and he would travel at his own expense to treat patients around the state.

In 2014, Dr. White became a preferred provider at Victory Landmark Hospital in San Antonio, Texas. Dr. Cyr, the owner of OSI, also provided services at that hospital, and the two doctors met in June 2014. Shortly thereafter, Dr. Cyr asked Dr. White about the possibility of forming a relationship between their two businesses.

On July 9, 2014, Dr. White met with Dr. Cyr and Linda D'Spain, OSI's CEO, about affiliating with OSI. Dr. Cyr and D'Spain expressed interest in having Dr. White treat OSI's patients because the previous pain management physician "unexpectedly departed." Dr. Cyr and D'Spain made several representations to Dr. White that OSI was profitable and would be able to pay him his negotiated compensation packages, that OSI had an

---

[1] Since this is an appeal of a motion to dismiss, we assume all of White's factual statements are true. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

existing management system with computerized billing, that OSI had practices and relationships with third-party payers that allowed for timely payment, that OSI's reimbursement rates were consistent with those in the community, and that OSI would timely apply for Dr. White's credentials so that he could receive prompt payment.

Dr. Cyr and D'Spain proposed an arrangement where Dr. White would be managed by OSI, Dr. White would be paid a percentage of the net billings for services performed, and OSI would receive a percentage for its role in administrative services and billing patients. Dr. White rejected the proposal as economically unfeasible, instead proposing that he and OSI share the gross billings revenue equally, with payment due on the first of the month following collections. Dr. Cyr orally agreed to Dr. White's proposal on behalf of himself and OSI.

Dr. White began treating OSI's patients shortly thereafter. Dr. White met with OSI's pain management team, and D'Spain "explicitly or implicitly" reiterated the representations from their July 9 meeting. On July 17, 2014, Cyr and D'Spain emailed Dr. White a written agreement containing the net billings agreement that he had already rejected. He again rejected it, and Dr. Cyr and D'Spain "indicated that the draft had been provided in error and reiterated the oral agreement to the 50/50 gross collections compensation model . . . ." Dr. White kept treating OSI's patients.

Dr. White maintained his own billings records while affiliated with OSI. On September 5, 2014, he requested payment of his share of the revenues collected. D'Spain told him that payment would be forthcoming but delayed because OSI used a third-party to distribute checks. On October 7, Dr. White was issued a check for a mere $82.21. On October 22, he texted D'Spain about the discrepancy between the amount of his check and the amount he was owed, and she promised to email him accounting reports that

day. She did not provide the reports. Dr. White's staff requested the reports again on October 24 and learned that OSI did not begin Dr. White's credentialing process until October 1. OSI assured Dr. White that he would receive a "significant payment" in November, and he received a check for approximately $7,500.00. He also received a billing report that verified that he was paid fifty percent of the gross billings during the relevant time period. He received a December payment in excess of $10,000.

He did not receive a January payment, however, and he contacted Dr. Cyr and D'Spain. On January 6, he texted them about the money that he was owed and OSI's lack of transparency. D'Spain apologized and said that OSI was working hard to credential and pay Dr. White. Dr. White's staff again requested monthly reports containing information about billings, and the staff learned that Dr. White was still not credentialed. At this point, D'Spain requested that Dr. White sign and return the contract she previously sent. Dr. White reminded her that the contract was incorrect and that he had not received the correct version.

Dr. White received a $13,300.00 payment in February. He again asked for the reports, D'Spain said they were coming, and she never sent them. Frustrated by the back and forth, Dr. White texted Dr. Cyr on March 6 and requested a meeting; they agreed to meet when Dr. Cyr returned from vacation. On March 10, Dr. White received a payment for $17,076.77. D'Spain sent Dr. White the correct version of the contract, and he requested an electronic copy that he could forward to his attorney for review.

From April to June 2015, Dr. White did not receive prompt payment at the beginning of the month. His staff would request payment, D'Spain would promise him that a deposit was forthcoming, and he would receive a payment between $16,000-$17,100. D'Spain never sent him the electronic copy of the contract, and on June 12, 2015, he "indicated that enough was

enough." OSI cancelled Dr. White's upcoming patient appointments, and Dr. Cyr texted Dr. White that paying him was a priority. Dr. Cyr admitted that it was too expensive to run the practice based on the 50/50 gross billings agreement and that he knew that it would be too expensive at the time he entered the agreement. Dr. Cyr also said this knowledge was what prompted OSI to send the incorrect version of the contract (with the net billings payment scheme) initially.

Dr. White hired an attorney to collect the money OSI owed him. That effort failed. He then sued OSI in state court in January 2015 for breach of contract, quantum meruit, and common law fraud/promissory estoppel. On January 20, 2018, Dr. Cyr filed for relief under Chapter 7 of the Bankruptcy Code, staying the state court proceeding. Dr. White then filed a claim in bankruptcy court, requesting that Dr. Cyr's debts to him be deemed non-dischargeable under 11 U.S.C. § 523(a)(2), (a)(4), and (a)(6). Dr. Cyr filed a motion to dismiss, or in the alternative, a motion for a more definite statement. The bankruptcy court granted the motion for a more definite statement and denied the motion to dismiss without prejudice. Dr. White filed his amended complaint, Dr. Cyr filed an amended motion to dismiss, and the court dismissed Dr. White's complaint. He appealed to the district court.[2] The district court affirmed the bankruptcy court's dismissal of all claims against Dr. Cyr. This appeal follows.

## II. STANDARD OF REVIEW

"We review a district court's affirmance of a bankruptcy court's decision by applying the same standard of review to the bankruptcy court's

---

[2] The bankruptcy court only granted the motion to dismiss as to Dr. Cyr. The matter was still pending against OSI, but Dr. White dismissed his claims against OSI under FED. R. CIV. P. 41(a)(1)(A)(i).

No. 20-50348

findings of fact and conclusions of law that the district court applied." *Saenz v. Gomez,* 899 F.3d 384, 390 (5th Cir. 2018). "A bankruptcy court's findings of fact are subject to review for clear error, and its conclusions of law are reviewed *de novo.*" *Id.*

## III. DISCUSSION

Dr. White appeals the district court's dismissal of his claims for fraud under 11 U.S.C. § 523(a)(2)(A), alter ego to pierce OSI's corporate veil, and agency and vicarious liability. He also appeals the district court's overruling of his objections to Dr. Cyr's Amended Motion to Dismiss.

### 1. FRAUD CLAIMS

Dr. White argues that the district court erred by dismissing his fraud claims under FED. R. CIV. P. 12(b)(6). He argues that Dr. Cyr and D'Spain fraudulently induced him to agree to treat OSI's patients when they made misrepresentations about OSI. He also argues that they committed "string-along fraud"[3] throughout the duration of the agreement by continuing to misrepresent key information to induce him to continue treating OSI's patients. Dr. White relies on the same misrepresentations for his fraudulent inducement claim and his "string-along fraud" claims under 11 U.S.C. § 523(a)(2)(A). Applying Texas law, we consider the string-along fraud claim to be subsumed under the fraudulent inducement claim and analyze it accordingly. *See Int'l Bus. Machs. Corp.*, 573 S.W.3d at 233.

---

[3] "String-along fraud" is a type of fraudulent inducement claim where the fraud occurs after an agreement is entered into and induces a party to continue performing throughout the course of the agreement. *See Int'l Bus. Machs. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 233 (Tex. 2019) ("Characterizing this as a claim for 'string-along fraud,' Lufkin argued . . . that IBM committed fraud after the parties entered into [an agreement].").

No. 20-50348

Section 523(a)(2)(A) prohibits discharge of certain debts "obtained by false pretenses, a false representation, or actual fraud." Actual fraud under § 523(a)(2)(A) and Texas common law fraud are analogous.[4] *See Saenz,* 899 F.3d at 394 ("The elements of 'actual fraud' under § 523(a)(2)(A) generally correspond with the elements of common law fraud in Texas . . . ."). The elements of actual fraud are as follows:

> (1) the debtor made a representation; (2) the debtor knew the representation was false; (3) the representation was made with intent to deceive the creditor; (4) the creditor actually and justifiably relied on the representation; and (5) the creditor sustained a loss as a proximate result [of its reliance].

*Id.* (citing *In re Mercer*, 246 F.3d 391, 403 (5th Cir. 2001)).

To survive a 12(b)(6) motion to dismiss, a plaintiff must allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face under *Bell Atlantic v. Twombly* and *Ashcroft v. Iqbal.*" *Spitzberg v. Hous. Am. Energy Corp.*, 758 F.3d 676, 683 (5th Cir. 2014) (internal citations omitted). Beyond the ordinary pleading standard, a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). Mental states like intent and knowledge "may be alleged generally." *Id.*

Under the first element of a § 523(a)(2)(A) actual fraud claim, Dr. White must plausibly allege that Dr. Cyr made representations to him. *See Saenz*, 899 F.3d at 394. Dr. White argues that he was fraudulently induced into the agreement by Dr. Cyr and D'Spain's representations and omissions

---

[4] False representations are not the only grounds for demonstrating actual fraud under § 523(a)(2)(A). *See Husky Int'l Electronics, Inc. v. Ritz*, 136 S. Ct. 1581, 1590 (2016).

No. 20-50348

at their initial meeting on July 9, 2014. His amended complaint alleges that they made the following representations:

"(1) OSI was a profitable and lucrative practice and would generate sufficient revenues to enable it to meet obligations regarding compensation packages negotiated with [Dr. White];

(2) that OSI already had in place an internal physician management system with computerized billing;

(3) that OSI had relationships and billing protocols with third party payers that would enable them to timely and efficiently account[] for[,] bill, and collect for services to be provided by [Dr. White];

(4) that reimbursement rates from third party pay[e]rs were consistent with those in the community at large; and

(5) that in the event [Dr. White] became affiliated with OSI, that OSI and its staff would timely apply for and facilitate the credentialing of [Dr. White] for prompt payment by third-party payers."

The district court dismissed all fraud claims, concluding that Dr. White's amended complaint failed to demonstrate that Dr. Cyr or OSI had the intent to deceive him when making the above representations. We will analyze each representation in turn.

### a. Representation that OSI was profitable and would meet its obligation to Dr. White

Dr. White alleged that Dr. Cyr represented that OCI was profitable, lucrative, and capable of compensating Dr. White fifty percent of gross billings revenue as orally agreed to on July 9, 2014. Dr. White must have also alleged sufficient facts to demonstrate that this representation was "obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." § 523(a)(2)(A). If a statement is a "statement respecting the debtor's financial condition," the statement generally does not prevent discharge. *See* § 523(a)(2)(A). Such statement can only prevent discharge if it meets the

requirements of § 523(a)(2)(B)(i)-(iv), including the requirement that the statement be in writing.

Even if we assume that the representation that OSI was profitable and lucrative was false pretense, false representation, or actual fraud, we conclude that it was a statement respecting the debtor's financial condition. Since the statement was not in writing, it cannot render Dr. Cyr's debt non-dischargeable under § 523(a)(2)(B). We therefore agree with the district court's dismissal of Dr. White's fraud claim based on this representation.[5]

"Because the Bankruptcy Code does not define the words 'statement,' 'financial condition,' or 'respecting,' we look to their ordinary meanings." *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1759 (2018). A "statement" can be a declaration or a remark. *Id.* (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2229 (1976)). "[F]inancial condition" refers to "one's overall financial status," and "respecting" means "in view of[,] considering[,] with regard or relation to[,] regarding[,] [or] concerning." *Id.*

It follows that a declaration regarding one's overall financial status is a "statement respecting the debtor's financial condition." Here, Dr. Cyr declared that OSI was profitable, lucrative, and able to meet its obligation to Dr. White. Because this statement relates to OSI's overall financial status, it is a statement respecting OSI's financial condition.

But can a statement respecting OSI's financial condition be a statement respecting *Dr. Cyr's* financial condition as required by § 523(a)(2)? Indeed. A statement about a single asset can be a statement respecting the

---

[5] Though the 11 U.S.C. § 523(a)(2)(B) argument was not presented in the district court, we can "affirm the district court's judgment on any grounds supported by the record." *Sojourner T v. Edwards*, 974 F.2d 27, 30 (5th Cir. 1992).

debtor's financial condition. *Id.* at 1761. "A single asset has a direct relation to and impact on aggregate financial condition, so a statement about a single asset bears on a debtor's overall financial condition and can help indicate whether a debtor is solvent or insolvent, able to repay a given debt or not." *Id.* Because Dr. Cyr owned OSI, his statement about OSI's profitability was a statement about his own financial condition. Thus, Dr. Cyr's statement that OSI was a profitable and lucrative practice was a statement respecting his own financial condition.

Such statements generally do not render debts non-dischargeable. *See* § 523(a)(2)(A). However, statements respecting the debtor's financial condition may serve as the basis for non-discharge under § 523(a)(2)(A) if those statements meet the requirements of § 523(a)(2)(B). Under § 523(a)(2)(B), such statements must be in writing. Here, Dr. White alleges that Dr. Cyr's statement about OSI's profitability was made orally. Since the statement was not in writing, it does not fall within § 523(a)(2)(B) and is subject to the limits of § 523(a)(2)(A).

Because Dr. Cyr's statement about OSI's profitability was an oral statement respecting his financial condition, the statement does not prevent Dr. Cyr's debt from being discharged under this section. We thus affirm the district court's dismissal based on the representation that "OSI was a profitable and lucrative practice and would generate sufficient revenues to enable it to meet obligations regarding compensation packages negotiated with [Dr. White]."

*b. Representations that OSI had internal management systems, relationships and billing protocols to allow timely payment, and had consistent reimbursement rates*

Dr. White also argues that he pled enough about several other representations made by Dr. Cyr that OSI "already had in place an internal

physician management system with computerized billing; had relationships and billing protocols with third-party [payers] that would enable them to timely and efficient[ly] account[] for[,] bill, and collect for services to be provide[d] by [Dr. White]; and that reimbursement rates from third-party pay[e]rs were consistent with those in the community at large."

For these representations to serve as the basis for actual fraud under § 523(a)(2)(A), Dr. White must plead and demonstrate that Dr. Cyr made the statements, that the statements were false, that he knew they were false when he made them and intended to deceive, that Dr. White reasonably relied on the statements, and that he sustained losses as a result of that reliance. *See In re Mercer*, 246 F.3d at 403.

Dr. White sufficiently pled that Dr. Cyr made the statements, that he relied on the statements, and that he sustained losses due to the statements. He failed to sufficiently plead that the statements were false, and that Dr. Cyr knew they were false. We decline to analyze whether he pled that Dr. Cyr had the intent to deceive him by making the statements. We affirm the district court's dismissal of his § 523(a)(2)(A) claim based on these three representations.

*c. Representation that OSI would timely apply for Dr. White's credentials*

Dr. White again argues that his complaint adequately alleged that Dr. Cyr's representation that OSI would timely apply for his credentials was fraudulent.

He sufficiently pled that Dr. Cyr made the statement, that he relied on it, and that his reliance caused him injury. But he again failed to plead that the statement was false, that Dr. Cyr knew it was false, and that he intended to deceive him with this statement. Moreover, the district court noted that Dr. White's complaint describes OSI's efforts to get him credentialed by

third-party payers, untimely though they were.[6] For these reasons, we affirm the district court's dismissal of his § 523(a)(2)(A) claim based on this representation.

### *d. Fraud by omission*

Dr. White argues that neither Dr. Cyr, D'Spain, nor OSI disclosed information about disputes between Dr. Cyr and OSI and healthcare providers, reasons for the departures of other physicians, OSI and Dr. Cyr's financial difficulties, OSI's expenses and debts, and OSI's poor vendor relationships. Dr. White argues that their silence was akin to a false representation and that he pled sufficient facts about their omissions to sustain a claim under § 523(a)(2)(A). We disagree.

"In Texas, silence may be equivalent to a false representation when the circumstances impose a duty to speak on the party and he deliberately remains silent." *In re Arnette*, 454 B.R. 663, 689 (Bankr. N.D. Tex. 2011) (citing *Myre v. Meletio*, 307 S.W.3d 839, 843 (Tex. App.—Dallas 2010, pet. denied).

> The elements of fraud by omission are: (1) the defendant concealed or failed to disclose a material fact within its knowledge to the plaintiff; (2) the defendant had a duty to disclose that fact; (3) the defendant knew the plaintiff was ignorant of the fact and the plaintiff did not have an equal opportunity to discover the truth; (4) the defendant intended to induce the plaintiff to take some action by concealing or failing to disclose the fact; (5) the plaintiff relied on the defendant's nondisclosure; and (6) the plaintiff was injured as a result of acting without that knowledge.

---

[6] OSI started the credentialing process several months after Dr. White provided the necessary information and expected the process to begin.

*Id.* The district court dismissed Dr. White's fraud by omission claim, concluding that he failed to demonstrate that the "omissions were intentional and material; that Cyr had a duty to disclose the alleged omissions; that Cyr knew [he] was ignorant of the omissions and [could] not discover the truth; and that White relied on Cyr's omission and was harmed as a result of acting without that knowledge."

Dr. White says that his case presents an exception to the rule that that there is no obligation to disclose information because the duty attached when Dr. Cyr made partial disclosures. *See Rio Grand Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010). Dr. White argues that the representations made by Dr. Cyr and D'Spain were partial disclosures that created a duty for them to fully disclose related information about OSI.

Even if we assume that Dr. Cyr had a duty to disclose this information, Dr. White has not demonstrated that the omissions were material or intentional. Nor has he demonstrated that he was ignorant of this information and had no way to discover it. Dr. White attempts to link the alleged misrepresentations with omissions, arguing that the misrepresentations require disclosure. But he has not pled enough facts to make this more than a vague assertion, and he has not "raise[d] a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### 2. ALTER EGO CLAIM

Dr. White argues that the district court erred in dismissing his claim to pierce OSI's corporate veil under an alter ego theory. We disagree.

Under Texas law, a court may pierce the corporate veil and hold shareholders liable when "the corporation is the alter ego of its owners and/or shareholders . . . ." *W. Horizontal Drilling Inc. v. Jonnet Energy Corp.*, 11 F.3d 65, 67 (5th Cir. 1994). The alter ego theory applies when there is

No. 20-50348

"such a unity between corporation and individual . . . that the separateness of the corporation has ceased and holding only the corporation liable would result in an injustice." *Gibraltar Sav. v. LDBrinkman Corp.*, 860 F.2d 1275, 1288 (5th Cir. 1988) (quoting *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986) (superseded on other grounds by TEX. BUS. ORGS. CODE § 21.223)).

Dr. White failed to plead facts that demonstrate unity between OSI and Dr. Cyr. Plaintiffs may demonstrate alter ego by demonstrating several factors such as:

> (1) the payment of alleged corporate debts with personal checks or other commingling of funds; (2) representations that the individual will financially back the corporation; (3) the diversion of company profits to the individual for his or her personal use; (4) inadequate capitalization; (5) whether the corporation has been used for personal purposes; and (6) other failure to keep corporate and personal assets separate.

*In re Gregg*, Nos. 10-41181, 10-4162, 2012 WL 4506776 (Bankr. E.D. Tex. Sep. 28, 2012). Though it is not necessary to allege any one of the factors listed in *In re Gregg*, we find it telling that Dr. White did not sufficiently allege any of them. He alleges many facts about the nature of Dr. Cyr's relationship with OSI—his ownership, his ability to negotiate contracts, his treatment of patients, etc. But he fails to allege any impermissible unity between the two other than his bare allegation that Dr. Cyr used OSI's funds for personal purposes. He therefore failed to allege any facts under which relief is plausible based on alter ego.

### 3. AGENCY AND VICARIOUS LIABILITY CLAIMS

Dr. White next argues that he pled enough facts to demonstrate that D'Spain was Dr. Cyr's agent. If D'Spain was Dr. Cyr's agent and committed fraud that can be attributed to him, the resulting debt would also not be

No. 20-50348

dischargeable under § 523(a)(2)(A). *See In re Quinlivan*, 434 F.3d 314, 319 (5th Cir. 2005). We disagree.

The district court dismissed Dr. White's agency and vicarious liability claims because it concluded that Dr. White did not plausibly allege that D'Spain was Dr. Cyr's agent. Under Texas law, agency relationships are created by express or implied agreements by the parties. *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250, 269 (5th Cir. 1980). The relationship may also be based on apparent authority where the principle permits the agent to hold herself out as having authority and a reasonable person concludes that the agent has such authority. *See Ames v. Great S. Bank*, 672 S.W.2d 447, 450 (Tex. 1984).

Dr. White did not allege that D'Spain and Dr. Cyr entered into an agreement to form an agency relationship. Thus, his theory of agency rests on D'Spain's purported apparent authority to act on Dr. Cyr's behalf. But Dr. White fails to allege any facts that suggest that she had such authority. Dr. White's only factual assertions about D'Spain relate to her presence in his initial meeting with Dr. Cyr and her correspondence with Dr. White about his payments and credentials. Even assuming all of these allegations are true, Dr. White merely detailed his interactions with D'Spain as OSI's CEO. None of these facts suggest that she was Dr. Cyr's agent. Absent an agency relationship, Dr. White did not plead any other grounds on which Dr. Cyr could be vicariously liable for D'Spain's actions. Thus, we affirm the district court's dismissal of Dr. White's agency and vicarious liability claims.

### 4. OBJECTIONS UNDER FED. R. CIV. P. 7(b)

Dr. White's final argument is that the district court erred by granting Dr. Cyr's Amended Motion to Dismiss. He argues that the motion failed to meet FED. R. CIV. P. 7(b)(1)(B)'s requirement that motions "state with particularity the grounds for seeking the order." The crux of Dr. White's

15

argument is that Dr. Cyr's amended motion referenced parts of Dr. White's original complaint, and Dr. White omitted many of these parts in his amended complaint. Dr. White concludes that the confusion caused by the complaint made it uncertain what claims Dr. Cyr was targeting with his motion to dismiss. We disagree.

Rule 7(b)(1) requires "some degree of specificity on the movant's part." *Kelly v. Moore*, 376 F.3d 481, 484 (5th Cir. 2004). "This rule affords the court and the opposing party notice of the substance of the basis for the requested order; [it] does not require ritualistic detail." *Id.* (quoting MOORE'S FEDERAL PRACTICE CIVIL § 59.10[1]).

Though Dr. Cyr's motion to dismiss certainly lacks some detail, we cannot conclude that his pleading deprived the court or Dr. White of notice of the relief he requested. His motion listed deficiencies in Dr. White's claims, including his failure to plead the existence of a duty related to his fraudulent omissions claims or willful or malicious behavior. Dr. Cyr ended his motion by praying that the court dismiss Dr. White's amended complaint for failure to plead sufficient facts under § 523(a)(2)(A), (4), and (6). *Id.* We thus affirm the district court's conclusion that Dr. Cyr's amended motion to dismiss suffices under Rule 7(b).

## IV. CONCLUSION

For the foregoing reasons, the district court's dismissal of Dr. White's amended complaint is AFFIRMED.