United States Court of Appeals
Fifth Circuit

**F I L E D**

August 6, 2007

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

No. 06-30771

MARIA ARIAS-BENN, Individually and On Behalf of the Class,

Plaintiff-Appellant,

versus

STATE FARM FIRE & CASUALTY INSURANCE COMPANY,

Defendant-Appellee.

**Appeal from the United States District Court
for the Eastern District of Louisiana
(2:05-CV-6269)**

Before KING, DAVIS, and BARKSDALE, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Maria Arias-Benn appeals the Federal Rule of Civil Procedure 12(b)(6) (failure to state a claim) dismissal, with prejudice, of her complaint against State Farm Fire & Casualty Insurance Company, concerning its refusal to replace policyholders' freezer and refrigerator units damaged by food putrefaction as a result of power outages after Hurricane Katrina. **AFFIRMED.**

I.

Hurricane Katrina in August 2005 resulted in an extended loss of electrical power. Accordingly, many residents of the affected areas experienced refrigerator and freezer damage due to the

1

spoilage and putrefaction of the contents. Arias-Benn, a State Farm insured homeowner in New Orleans, Louisiana, submitted a claim to State Farm for replacement of her damaged refrigerator. Her claim was denied.

Accordingly, Arias-Benn filed this action in Louisiana state court, seeking damages, individually and on behalf of a putative class of State Farm insureds. She claimed State Farm breached the insurance policy by refusing to replace insureds' refrigerators and freezers damaged by the spoilage of food caused by power outages resulting from the hurricane. She further claimed negligence, breach of fiduciary duty, fraud, misrepresentation, and violations of Louisiana's Unfair Trade Practices and Consumer Protection Law.

State Farm removed this action to district court. In response to the court's order to specify which provision of the homeowner's policy was breached, Arias-Benn amended her complaint to claim State Farm breached its duty to cover personal property damaged by a covered peril under "SECTION I – LOSSES INSURED – COVERAGE B – PERSONAL PROPERTY", quoted *infra*. On State Farm's motion, pursuant to Federal Rule of Civil Procedure 12(b)(6) (failure to state a claim), the complaint was dismissed with prejudice.

## II.

The Rule 12(b)(6) dismissal is reviewed *de novo*. *E.g.*, **Gen. Elec. Capital Corp. v. Posey**, 415 F.3d 391, 395 (5th Cir. 2005). In determining whether Arias-Benn stated a claim sufficient to

avoid dismissal under that Rule, the well-pleaded facts alleged in her complaint are accepted as true and the allegations are construed in the light most favorable to her. *E.g.*, *Muhammad v. Dallas County Cmty. Supervision & Corrs. Dept.*, 479 F.3d 377, 379 (5th Cir. 2007). Nevertheless, "[w]e do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions". *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

Arias-Benn claims State Farm is required, pursuant to the homeowner's policy it issued to her and other members of the putative class, to replace refrigerators and freezers damaged due to the spoilage of their contents caused by the prolonged power outage that occurred because of Hurricane Katrina. As noted, she contends coverage exists under "SECTION I – LOSSES INSURED – COVERAGE B – PERSONAL PROPERTY", which states:

> We insure for accidental direct physical loss to property described in Coverage B caused by the following perils, except as provided in **SECTION I – LOSSES NOT INSURED:**
>
> . . . .
>
> 2. **Windstorm or hail.** This peril does not include loss to property contained in a building caused by rain, snow, sleet, sand or dust. This limitation does not apply when the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

3

Based on this language, she asserts the policy covers all personal property in a building for which there is "accidental direct physical loss" caused by windstorm or hail, unless some exclusion applies.

Arias-Benn maintains: Louisiana state law interprets "direct loss" to mean a proximate or efficient cause of the loss; and, accordingly, by causing the power outage and preventing residents from returning to their properties to clean their refrigerators and freezers, Hurricane Katrina was a proximate cause of the spoilage that damaged the units.

State Farm responds that the policy has a provision enumerating covered losses for damage caused by power interruption, SECTION I – ADDITIONAL COVERAGES, subsection 7, quoted *infra*, which specifically addresses the circumstances under which payment will be made for damages associated with a refrigerator and freezer and their contents. Because Arias-Benn's claim does not fall within that provision, State Farm asserts Arias-Benn has failed to state a claim.

Louisiana contract law governs our interpretation of State Farm's policy. *See* **ACS Constr. Co., Inc. of Miss. v. CGU**, 332 F.3d 885, 888 (5th Cir. 2003). "Under Louisiana law, an insurance policy is a contract between the parties, and it should be construed according to the general rules of contract interpretation set forth in the Civil Code." **Riverwood Int'l Corp. v. Employers**

4

*Ins. of Wausau*, 420 F.3d 378, 382 (5th Cir. 2005) (citing *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 763 (La. 1994)). According to the Civil Code, contract interpretation is "the determination of the common intent of the parties". LA. CIV. CODE ANN. art. 2045 (1985). That intent, reflected by the words in the policy, defines the extent of coverage. *Samuels v. State Farm Mut. Auto. Ins. Co.*, 939 So. 2d 1235, 1240 (La. 2006). "Such intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning." *La. Ins. Guar. Ass'n*, 630 So. 2d at 763. Furthermore, "[a]n insurance contract is to be construed as a whole, and one portion thereof should not be construed separately at the expense of disregarding another". *Pareti v. Sentry Indem. Co.*, 536 So. 2d 417, 420 (La. 1988). Any ambiguity should be construed against the insurer. LA. CIV. CODE ANN. art. 2056; *e.g.*, *Domingue v. Rodrigue*, 686 So. 2d 132, 134 (La. Ct. App. 1996).

The policy provided coverage for personal property. That coverage was limited to "accidental direct physical loss" from those perils enumerated in the policy. Louisiana law equates "direct loss" with proximate cause; an insurance policy, however, may limit or otherwise define "direct loss". *See* *Lorio v. Aetna Ins. Co.*, 232 So. 2d 490, 493 (La. 1970).

5

Therefore, before determining whether Hurricane Katrina could have proximately caused the damage, we must determine whether the policy restricts or otherwise defines "accidental direct physical loss" to prevent Arias-Benn from recovering under the circumstances alleged in her complaint.  Along that line, the above-referenced "ADDITIONAL COVERAGES", subsection 7, states:

> **Power Interruption**.  We cover accidental direct physical loss caused directly or indirectly by a change of temperature which results from power interruption that takes place on the **residence premises**.  The power interruption must be caused by a Loss Insured occurring on the **residence premises**.  The power lines off the **residence premises** must remain energized.  This coverage does not increase the limit applying to the damaged property.

Although Arias-Benn asserts this provision must be read as expanding upon those losses covered in the "Coverages" section of the policy, this "Additional Coverages" provision must be read in conjunction with the policy as a whole.  *See* ***Pareti***, 536 So. 2d at 420.  The natural implication of the "Additional Coverages" provision is that "accidental direct physical loss" excludes personal property damaged by a power outage other than as specifically described in the policy.  The presence of expanded coverage for one particular type of loss attributable to power interruption (one "occurring on the **residence premises**", with "[t]he power lines off the **residence premises** ... remain[ing]

6

energized") indicates the exclusion of other, unspecified types of loss attributable to such interruption.

Moreover, another provision in the "Additional Coverages" section provides coverage for *refrigerated products* spoiled due to power failure. Subsection 8 of SECTION I – ADDITIONAL COVERAGES states:

> **Refrigerated Products**. Coverage B is extended to cover the contents of deep freeze or refrigerated units on the **residence premises** for loss due to power failure or mechanical failure. If mechanical failure or power failure is known to you, all reasonable means must be used to protect the property insured from further damage or this coverage is void.

This provision further evidences that the parties intended to provide coverage for only particular types of damages caused by power interruptions other than those occurring "on the residence premises". There is no indication they intended to include damage to refrigerators and freezers caused by power outages occurring outside the residence premises.

Arias-Benn does *not* claim the damage caused to her and others' refrigerator and/or freezer was caused by a power outage that occurred on the residence premises. As a result, she does not state a breach-of-contract claim upon which relief can be granted. Because her other claims depend on there being a valid breach-of-contract claim, they likewise fail.

7

III.

For the foregoing reasons, the judgment is

**AFFIRMED.**