# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 15, 2010

No. 09-20607

Lyle W. Cayce
Clerk

RIO GRANDE ROYALTY COMPANY, INC., on behalf of itself and all others
similarly situated,

Plaintiff - Appellant

v.

ENERGY TRANSFER PARTNERS, L.P.; ENERGY TRANSFER CO.;
ETC MARKETING, LTD.; HOUSTON PIPELINE COMPANY,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, Chief Judge, and HIGGINBOTHAM and ELROD, Circuit
Judges.

EDITH H. JONES, Chief Judge:

Rio Grande Royalty Company, Inc., contends that defendants Energy
Transfer Partners, L.P., Energy Transfer Company, ETC Marketing, Ltd., and
Houston Pipeline Company committed common law fraud by truthfully reporting
natural gas transactions that, because of the defendants' alleged monopolization
of the Houston spot market, served to lower prices artificially on long-term
contracts. As a result of the alleged misrepresentations, the defendants and

No. 09-20607

other gas buyers were able to purchase natural gas at below-market prices, to the detriment of Rio Grande and other sellers. Rio Grande also argues that the defendants' failure to disclose this manipulation to sellers constituted a material omission and thus fraud. The district court dismissed the claims. Because the defendants' alleged conduct does not amount to common law fraud, we affirm.

## I. BACKGROUND

The district court found that the plaintiff's complaint failed to state a claim under FED. R. CIV. P. 12(b)(6), and we therefore assume the truth of all facts properly pled within it.

The parties are participants in the natural gas market, buying and selling contracts for the delivery of gas. These contracts are typically of two kinds: those in which the price is fixed in the contract and those in which the price is determined by reference to a published price index. The price index at issue here, for deliveries to the Houston Ship Channel (HSC), is published monthly by trade publications such as *Platts Inside FERC's Gas Market Report* and is based on fixed-price transactions made during a "bidweek," usually the last five business days of the preceding month. Buyers and sellers voluntarily report volume and price data to Platts, which then calculates the index price.

The plaintiffs allege that the defendants—energy traders and operators of interstate pipelines and other infrastructure—monopolized trading in the market through HSC, a principal U.S. natural gas gateway, from December 2003 through December 2005. During this period, the defendants exploited their market position by making bidweek sales at artificially low prices—in other words, dumping. This, in turn, suppressed the HSC index, to the benefit of the

No. 09-20607

defendants, which were net buyers of natural gas, and to the detriment of the plaintiff and other sellers bound by index-linked contracts.[1]

Rio Grande filed suit in 2008, seeking to certify a class of all natural gas sellers, other than the defendants, who sold gas at prices determined by reference to the manipulated HSC index.[2] Its original complaint asserted claims under the Sherman Act for predatory pricing, unlawful monopolization, and restraint of trade. The district court dismissed these antitrust claims under Rule 12(b)(6). It found that the plaintiff had failed to allege any predatory behavior, merely low prices; failed to allege facts showing the extent of the defendants' market power; and failed to do more than simply assert collusive behavior. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65 (2007) ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions.") (internal quotation marks removed). At the same time, the court granted the plaintiff thirty days to file an amended complaint.

The plaintiff's amended complaint sought to remedy its Sherman Act monopolization claim and asserted an additional claim of common law fraud. The defendants, it alleged, "knowingly, intentionally and recklessly misrepresented and omitted material facts by, inter alia, reporting trade data . . . to Platts that: (i) intentionally misstated the true market price of natural gas sold at HSC; and (ii) failed to disclose that the prices of HSC fixed-price baseload natural gas they reported to Platts did not represent, and were

---

[1] In March 2008, the Commodity Futures Trading Commission announced a consent order under which defendants would pay $10 million in a civil monetary penalty to settle charges of manipulating both the price of natural gas at HSC and the HSC index. In September 2009, the defendants settled related claims brought by the Federal Energy Regulatory Commission.

[2] As pled, this class would include any seller bound by a contract referencing the HSC index, not just those who completed transactions with the defendants or who are net sellers.

not intended to represent, the true market forces of supply and demand." The plaintiff did not allege that the defendants misreported their sales, but that the truthful sales data they supplied to Platts were misleading because of market manipulation.

The district court denied the plaintiff's motion to amend its complaint for futility, finding that the amended complaint still failed to state a claim under Rule 12(b)(6). Truthful reporting of sales data, it held, did not constitute a misrepresentation, and the plaintiffs had failed to plead facts showing the defendants' intent to induce reliance by failing to disclose any market manipulation.

The plaintiff timely appealed, challenging only the dismissal of its common law fraud claim.

## II.  STANDARD OF REVIEW

A district court's denial of a motion for leave to amend a pleading is subject to review for abuse of discretion. *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 124 (5th Cir. 1996). The trial court acts within its discretion in denying leave to amend where the proposed amendment would be futile because it could not survive a motion to dismiss. *Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003).

## III.  DISCUSSION

On appeal, Rio Grande reasserts that its allegations state a claim for fraud by misrepresentation or omission. Specifically, it argues that the truthful reporting of transactions tainted by market manipulation may amount to fraudulent misrepresentation and that failure to disclose this misrepresentation may amount to a fraudulent omission of material fact.

To state a claim of fraud by misrepresentation under Texas law, a plaintiff must sufficiently allege (1) a misrepresentation that (2) the speaker knew to be false or made recklessly (3) with the intention to induce the plaintiff's reliance,

followed by (4) actual and justifiable reliance (5) causing injury. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001).

Alternatively, a plaintiff may, in limited circumstances, claim fraud by omission: "[S]ilence may be equivalent to a false representation only when the particular circumstances impose a duty on the party to speak and he deliberately remains silent." *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001). "Generally, no duty of disclosure arises without evidence of a confidential or fiduciary relationship," *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998), but the plaintiff here alleges no such relationship. Outside of such a relationship, a duty to disclose may arise, among other circumstances, "when one makes a partial disclosure and conveys a false impression." *Brown & Brown of Tex., Inc. v. Omni Metals, Inc.*, ___ S.W.3d ___, 2010 WL 1240580, at *16 (Tex. App.–Houston Mar. 25, 2010).

Therefore, to prevail under either theory—affirmative misrepresentation or omission—the plaintiff must allege some defect in the defendants' voluntary reports to Platts. To that end, it claims that these sales reports were misstatements because the sales did not represent "the true market price of natural gas sold at HSC." This, in turn, gave rise to a false impression, which the defendants were obliged to correct.

Both theories depend on the conjecture that a sample of market transactions, compiled into an index, necessarily reflects a "true market price." The plaintiff, however, disclaims that proposition in its amended complaint, alleging (quite accurately) that the Platts HSC index is merely "representative of transactions." A price index may, of course, be *evidence* of fair market value, *Transoil (Jersey) Ltd. v. Belcher Oil Co.*, 950 F.2d 1115, 1122 (5th Cir. 1992) (citing Platt's Oilgram price reports as evidence of market price), but it embodies no deeper truth than that. Indeed, it is a mundane fact that actual prices often diverge from those reported in indices, "reflect[ing] the interaction of many

No. 09-20607

variables" relevant to pricing. *N. Cent. Airlines, Inc. v. Cont'l Oil Co.*, 574 F.2d 582, 588 (D.C. Cir. 1978) (referencing Platt's Oilgram). By corollary, an index may diverge from the "true market price," for any number of reasons, due to the vagaries of the transactions that underlie it.[3] The "true" market price is that at which buyers are willing to buy and sellers sell, and an index does no more than provide a window into their commerce. *E. & J. Gallo Winery v. EnCana Corp.*, 503 F.3d 1027, 1031 (9th Cir. 2007).

We do not discount the possibility that price reports may be tainted by fraud. A report could plainly misstate the terms of a transaction. It could fabricate a transaction out of whole cloth or be the result of "wash trades"—offsetting transactions calculated to manipulate prices—that are, in substance, equally fictitious. But the plaintiff alleges none of these. Rather, as the amended complaint recounts, the defendants engaged in real transactions of real economic substance and reported the details of those transactions accurately. That these transactions may have been carried out at artificially low prices does not render the *reporting* of those prices a misstatement.

For the same reason, the defendants were not obliged to disclose that their price reports did not represent "the true market forces of supply and demand." If the Platts index is "representative of transactions," and if the defendants' transactions were properly reported, then there could be no false impression—at no point did the index cease being "representative of transactions"—and hence no duty to disclose.

The plaintiff has failed to allege either a material misstatement or actionable omission on the part of the defendants and so has failed to state a

---

[3] Underscoring these vagaries, the Platts editors exercise discretion to remove transaction reports that they believe to be anomalous or unreliable—in other words, "outliers." *See United States v. Valencia*, Crim No. H-04-514-SS, 2006 WL 3716657, at *6 n.7 (S.D. Tex. Dec. 14, 2006) (Atlas, J.).

No. 09-20607

claim for fraud. For reason of futility, the district court did not abuse its discretion in denying the plaintiff leave to amend its complaint.

### IV. CONCLUSION

The district court's dismissal of the appellant's claims is **AFFIRMED.**