# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 6, 2020

Lyle W. Cayce
Clerk

No. 20-30217
Summary Calendar

Marion Frances Melancon,

*Plaintiff—Appellant*,

*versus*

Carnival Corporation, *doing business as Carnival Cruise Line*;
Unidentified Party; Carnival Dream,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 2:19-CV-9721

Before King, Smith, and Wilson, *Circuit Judges*.

Per Curiam:*

Marion Melancon slipped and fell on a ship owned by Carnival Corporation and sued Carnival three years later. In securing her ticket for the cruise, however, Melancon had executed a ticket contract, which shortened

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-30217

the period of limitations to one year.  Concluding that the contract bound Melancon, the district court granted Carnival's motion to dismiss, because Melancon's claims were untimely.  We affirm.

## I.

Melancon is "deaf and mute, visually impaired and functionally illiterate."  She is legally blind and uses American Sign Language ("ASL") as her primary form of communication.

In 2016, Melancon took a cruise on the CARNIVAL DREAM after executing a ticket contract.[1]  The contract has two pertinent parts.  First, it imposes a one-year period of limitations for claims.[2]  Second, it contains a forum selection clause requiring that plaintiffs bring claims in the Southern District of Florida.[3]

On April 21, 2016, Melancon boarded the CARNIVAL DREAM in New Orleans.  On April 24, as the ship remained docked in New Orleans, Melancon slipped on a "foreign substance" on the deck, injuring her hip, leg, and other parts of her body.  The injuries required surgery and caused Melan-

---

[1] According to Melancon's brief, prospective passengers receive Carnival's ticket contracts in an email after purchase, with a link to a page on Carnival's website where the passenger must review and accept the contract.  Passengers must acknowledge those contracts before boarding.  In bold, capital letters, the contract refers to itself as "**A LEGALLY BINDING CONTRACT**," and "**ESPECIALLY DIRECT[S]**" guests to examine clauses that provide "**IMPORTANT LIMITATIONS ON THE RIGHTS OF GUESTS TO ASSERT CLAIMS AGAINST CARNIVAL CRUISE LINES**."

[2] That clause reads as follows: "Carnival shall not be liable for any claims . . . unless filed within one year after the date of the injury . . . .  Guest expressly waives all other potentially applicable state or federal limitations periods."

[3] That clause reads as follows: "[A]ll disputes and matters . . . shall be litigated, if at all, before the United States District Court for the Southern District of Florida in Miami."

No. 20-30217

con "great pain and physical suffering, as well as mental suffering . . . ."

Exactly three years later, Melancon sued Carnival in the Eastern District of Louisiana. Melancon alleged negligence and claimed that Carnival had breached its duty to provide a seaworthy vessel and to keep its deck in a safe condition. Carnival moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), citing the ticket contract's one-year period of limitations. Melancon in turn averred that the contract was unenforceable, because she lacked capacity to enter into it.[4] The district court granted Carnival's motion to dismiss. In doing so, the court declined to consider several documents attached to Carnival's motion to dismiss. The court did, however, consider the ticket contract. Melancon timely appealed.

## II.

We review a dismissal under Rule 12(b)(6) de novo. *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018). To survive a motion to dismiss, the complaint must "state a claim to relief that is plausible on its face," meaning that "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). Conversely, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements cannot establish facial plausibility." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 520 (5th Cir. 2016) (cleaned up). We accept all of Melancon's "well-pleaded facts as true and . . . consider those facts in the light most favorable" to Melancon. *Romero*, 888 F.3d at 176.

---

[4] The district court analyzed whether, besides the issue of capacity, the contract was enforceable. Melancon does not appear to object to that analysis, so we do not analyze the enforceability of the ticket contract beyond Melancon's capacity to enter into it.

No. 20-30217

III.

Melancon contends that the district court incorrectly granted the motion to dismiss, because (1) Melancon lacked capacity to consent to the ticket contract, and (2) the court should have given Melancon an opportunity to amend her complaint.[5]  We disagree on each point.

A.

Melancon claims that she lacked the capacity to consent to the ticket contract and is thus not bound by its period of limitations.  Clauses that shorten periods of limitations for suits against cruise lines are often enforceable, *see Carpenter v. Klosters Rederi A/S*, 604 F.2d 11, 13 (5th Cir. 1979), and Congress prohibits cruise lines from contractually shortening such periods

---

[5] Melancon also claims—without developing a full-throated argument—that Carnival "relied on summary judgment type evidence."  It is unclear whether that statement refers to the ticket contract or the other documents that Carnival submitted and that the district court declined to consider.  In any event, Melancon doesn't expressly contend that the court was wrong to examine the ticket contract.

Even supposing she made such a claim, it fails on the merits.  Although a district court considering a motion to dismiss should usually not consider evidence outside the pleadings, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."  *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

Melancon's complaint refers to "the venue and arbitration clauses contained within the boarding pass / cruise contract . . . ."  The contract is also "central to [Melancon's] claim."  *Id.*  The contract required Melancon to litigate in the Southern District of Florida and to bring suit "within one year" of injury.  But Melancon sues in the Eastern District of Louisiana, and she does so three years after her injury.  If the ticket contract is enforceable, venue is thus improper, and Melancon's claim is time-barred.  Because proper venue and compliance with the applicable period of limitations are generally necessary conditions of a successful suit, the contract that establishes proper venue and the applicable period of limitations is central to Melancon's claim.  Consequently, the allegation that she lacked capacity is also necessary for her suit to proceed, and she acknowledges that "[t]he entire case centers around this allegation."

No. 20-30217

to less than one year, *see* 46 U.S.C. § 30508(b)(2).[6]  To avoid the shortened period, Melancon thus claims that the ticket contract is unenforceable because she lacked capacity to enter into it.  Melancon has disabilities warranting protection under the Americans with Disabilities Act ("ADA"), and, the argument goes, Carnival's failure to provide accommodations violated the ADA and rendered Melancon contractually incapacitated.[7]

Both parties agree that the ADA covers Melancon's disabilities.  The ADA prohibits discrimination "on the basis of disability," which sometimes includes a failure to provide "auxiliary aids and services."  42 U.S.C. § 12182(a), (b)(2)(A)(iii).  Melancon thus contends that her ADA status required Carnival to provide her with auxiliary aids and services—such as interpreter services or accommodations for ASL users—when the two parties were contracting.  There are two issues here: (1) whether the ADA requires Carnival to provide aids and services while contracting via the Internet and (2) whether that ADA violation establishes contractual incapacity.  Even assuming that Carnival violated the ADA, Melancon has not alleged sufficient facts to make her claim of contractual incapacity plausible.

1.

The parties dispute the situations in which ADA protections attach.

---

[6] Congress prohibits cruise lines from shortening periods of limitations to one year where the prospective plaintiff is a "mental incompetent." *Id.* § 30508(d).  But Melancon neither cites § 30508 nor alleges that she is mentally incompetent.  Though Carnival contends that "the entire inquiry and appeal should end at this point," both parties appear to agree that contract law—not merely § 30508—governs the validity of the contract.  We thus examine whether it is unenforceable under contract principles.

[7] The district court applied general maritime law instead of Louisiana law, and neither party contests that decision.  We thus assume that general maritime law applies.  And maritime law requires us to apply federal law in determining the enforceability of a contract. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590 (1991).

No. 20-30217

Carnival contends that ADA protections apply only to "individuals in physical places," not to websites. Melancon in turn claims that ADA protections apply to all "communications with those who have disabilities . . . ." We express no opinion on that issue.[8] Even supposing, *arguendo*, that Carnival violated the ADA, Melancon has not established that that ADA violation negates contractual capacity.

2.

Melancon claims that Carnival's alleged ADA violation establishes contractual incapacity, because "auxiliary aides . . . were not provided to her for the purpose of making sure there was a meeting of the minds and the parties had validly contracted." There are three problems with that contention.

First, Melancon's contention confuses two distinct contract principles—capacity and mutual assent. She claims that the ADA required Carnival to provide her with aids in order to ensure "a meeting of the minds," otherwise known as "mutual assent."[9] But Melancon's complaint alleges a lack of "*capacity to consent*" to the contract, not a lack of *mutual assent*. Capacity and mutual assent are distinct contractual principles.[10] Melancon's contentions about mutual assent, therefore, do not support her contention about her lack of capacity.

---

[8] We note that Melancon does not bring an ADA claim, and Carnival contends that any such claim has prescribed. We need not decide that issue, because, even if Melancon could still claim an ADA violation, such a violation would not negate contractual capacity.

[9] *See Imperial Indus. Supply Co. v. Thomas*, No. 20-60121, 2020 WL 5249574, at *2 (5th Cir. Sept. 2, 2020) (per curiam) (unpublished) ("The term mutual assent means a meeting of the minds of both . . . parties to a contract; the fact that each agrees to all the terms and conditions, in the same sense and with the same meaning as the others." (cleaned up)). Melancon has not otherwise made any claim about mutual assent, and she does not ask to amend her complaint to allege a lack of mutual assent.

[10] *See, e.g.*, *Bowles v. OneMain Fin. Grp., L.L.C.*, 954 F.3d 722, 726 (5th Cir. 2020).

No. 20-30217

Even supposing that mutual assent were relevant to the issue of capacity, Melancon provides only conclusory statements about mutual assent without articulating why the alleged ADA violation removes contractual capacity. For instance, she spends several pages explaining the law about capacity, distinguishing various cases, and decrying Carnival's reliance on "summary judgment type evidence." But none of those claims presents an affirmative case that the alleged ADA violation establishes contractual incapacity.

And her complaint fares no better. Melancon's "mere conclusory statement[]" that she lacks capacity "cannot establish facial plausibility." *Snow Ingredients*, 833 F.3d at 520 (cleaned up). As the plaintiff, Melancon has the "obligation to provide the grounds" on which she is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). Because she has not explained why the alleged ADA violation vitiates contractual capacity, Melancon has failed in that obligation.[11]

Second, as a theoretical matter, Melancon doesn't explain how the presence of one party's duty negates the other's contractual capacity. And usually, a violation of a relevant duty renders a contract unenforceable for some independent reason, not for incapacity. For instance, even where one party might have a duty "to inform [the other party] that he was signing arbitration agreements," a violation of that duty could lead to a claim of fraudulent inducement—not incapacity. *Am. Heritage Life Ins. Co. v. Lang*,

---

[11] Melancon contends that various cases that the district court relied on did not involve ADA plaintiffs. Be that as it may, Melancon confuses the burdens. It was she—not the district court—who had the obligation to support her ADA theory. Melancon also claims that she "affirmatively plead[ed] that she was unable to read or understand the terms of the Ticket Contract" and that "Carnival has made no argument to the contrary." But it was Melancon—not Carnival—who had the obligation of supporting her ADA theory.

321 F.3d 533, 538 (5th Cir. 2003).

Third, our precedent doesn't support the theory that the alleged ADA violation vitiates contractual capacity. "It is a widely accepted principle of contracts that one who signs or accepts a written instrument will normally be bound in accordance with its written terms." *Id.* (cleaned up). That is so even where a party signs a contract "without reading it." *St. Petersburg Bank & Trust Co. v. Boutin*, 445 F.2d 1028, 1032 (5th Cir. 1971).

And our precedent forecloses each explanation that Melancon's complaint gives for her alleged lack of capacity. For instance, Melancon claims that she is "functionally illiterate . . . ."[12] But "illiteracy alone is not a sufficient basis for the invalidation" of a contract. *Am. Heritage*, 321 F.3d at 537. Melancon also contends that she is "visually impaired . . . ." But "parties should be held to contracts, even if . . . the parties cannot read or understand the contracts due to blindness . . . ." *Id.* at 538 (citing *Paper Express, Ltd. v. Pfankuch Maschinen*, 972 F.2d 753, 757 (7th Cir. 1992)).

Our precedent likewise doesn't suggest that a plaintiff's contractual capacity evaporates merely because a public accommodation subject to the ADA seeks to enforce a contract. Contract principles generally apply with equal force to ticket contracts.[13] In fact, cruise lines need not call terms of a ticket contract to a party's attention. *See Carpenter*, 604 F.2d at 13. Contract law does not require that a signing party read or understand a contract in

---

[12] Melancon's complaint also says that she is "deaf and mute . . . ." Besides suggesting that her deafness led to her illiteracy, Melancon does not suggest that either of those factors independently led to an inability to understand the contract. We thus consider those factors alongside illiteracy.

[13] *See Carpenter*, 604 F.2d at 13 ("The failure or inability of the passenger to read his ticket does not preclude his being bound by such conditions and limitations . . . .") (cleaned up).

order to be bound, and it thus does not require that the drafting party employ any particular method of communication.[14]

Melancon has thus failed to establish that the alleged ADA violation vitiates contractual capacity. Because Melancon points to no other doctrine rendering the ticket contract unenforceable, she is bound by the contract, which required her to bring suit "within one year" of any injury. Because Melancon sues three years after the accident, the district court did not err in concluding that the ticket contract "render[ed] her suit time barred."

B.

On appeal, Melancon asks for leave to amend her complaint to "affirmatively allege that she was entitled to ADA protections and also to point out that Carnival did not provide any of the required accommodations to her in connection with attempting to secure her agreement to the Ticket Contract." We review for abuse of discretion the denial of leave to amend. *Moore v. Manns*, 732 F.3d 454, 456 (5th Cir. 2013) (per curiam). But if "[a] party . . . neglects to ask the district court for leave to amend," she "cannot expect to receive such a dispensation from the court of appeals." *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003).

---

[14] The parties spill much ink discussing the applicability of several cases—most of which are nonbinding. To the extent that they are persuasive, they reinforce the well-established principle that parties are bound by the terms of a ticket contract even where they did not read or understand those terms. *See, e.g.*, *Lemoine v. Carnival Cruise Lines*, 854 F. Supp. 447, 448 (E.D. La. 1994); *Lieb v. Royal Caribbean Cruise Line, Inc.*, 645 F. Supp. 232, 235 (S.D.N.Y. 1986). Melancon contends that none of those cases "dealt with ADA plaintiffs." But the absence of arguments about ADA plaintiffs signals less that those cases cannot "support the district court's" opinion, and more that no plaintiff has tried Melancon's ADA-incapacity theory.

No. 20-30217

The record does not reflect that Melancon requested leave to amend.[15] "[A] complaint may be amended only by leave of the district court . . . ." *Id.* Because Melancon "never requested leave to amend at the district court," she is "thus not entitled to such relief from this court."[16]

Even supposing, *arguendo*, that Melancon impliedly raised, and the district court impliedly denied, a request to amend, that decision was not an abuse of discretion. Melancon's proposed amendment would allege that she is "entitled to ADA protections" and that "Carnival did not provide any of the required accommodations to her in connection with attempting to secure her agreement to the Ticket Contract." But we have concluded that the alleged ADA violation would not negate contractual capacity. Melancon's proposed amendment, therefore, would not survive a motion to dismiss. And a district court may properly deny leave to amend "where the proposed

---

[15] Melancon's brief does not indicate that she requested leave to amend. The order granting the motion to dismiss does not mention any motion for leave to amend. Carnival's brief says that the district court "properly declined leave to amend," but it provides no record cite to support that assertion. Although it is true that "[a] formal motion is not always required, so long as the requesting party has set forth with particularity the grounds for the amendment and the relief sought," we find no evidence that Melancon mentioned amendment to the district court. *See Willard*, 336 F.3d at 387. Although Melancon's response to the motion to dismiss "contain[ed] new factual allegations," that response "contained no language that might be construed as a request for leave to amend [her] complaint . . . ." *Estes v. JP Morgan Chase Bank, Nat'l Ass'n*, 613 F. App'x 277, 281 (5th Cir. 2015).

[16] *Wentzell v. JPMorgan Chase Bank, Nat'l Ass'n*, 627 F. App'x 314, 319 (5th Cir. 2015); s*ee also Law v. Ocwen Loan Servicing, L.L.C.*, 587 F. App'x 790, 796–97 (5th Cir. 2014) ("[W]e conclude that Law did not request leave to amend his complaint at the district court and is not entitled to such relief from this court."); *McClaine v. Boeing Co.*, 544 F. App'x 474, 478 (5th Cir. 2013) ("Since McClaine did not request leave to amend his complaint, we may not consider this matter on appeal."); *Badeaux v. BP Expl. & Prod. Co.*, 790 F. App'x 618, 621 (5th Cir. 2019) (denying a party's "request[] that we remand his case for an opportunity to amend his complaint" because the party "never moved to amend his complaint in the district court").

No. 20-30217

amendment would be futile because it could not survive a motion to dismiss." *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010).  Because Melancon's proposed amendment would be futile, we deny the request for leave to amend her complaint.

AFFIRMED.