# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 6, 2025

Lyle W. Cayce
Clerk

————————

No. 24-50335

————————

Sean P. McGrath,

*Plaintiff—Appellant*,

*versus*

Kyleigh Brewer, *individually and as Executor of* The Estate of Johnny D. Cope, *Deceased*; Jonathan Patrick Cope; John 1-10 Does,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:23-CV-150

———————————————————————

Before Graves, Higginson, and Wilson, *Circuit Judges*.

Per Curiam:[*]

Sean McGrath alleges Johnny Cope, now deceased, facilitated a Ponzi scheme in which McGrath lost $528,500. Five years later, McGrath sued Cope's estate and the two individuals who have served as its executor. He alleged claims for fraud, civil conspiracy to commit fraud, and violations of the New Mexico Unfair Practices Act against Cope's estate, as well as claims

———————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

for fraudulent transfer and civil conspiracy to commit fraudulent transfer against the Defendants collectively. The district court dismissed the case under Federal Rule of Civil Procedure 12(b)(6), concluding that McGrath's claims accrued outside Texas's four-year statute of limitations for fraud claims. We affirm.

## I.

After serving over twelve years in a federal penitentiary for committing wire fraud, laundering money, and running Ponzi schemes, Michael Booth started a golf cart business in Coachella Valley, California. The golf cart business—like Booth's rehabilitation—appeared to be successful, with endorsements from professional golfers and two showrooms filled with branded luxury carts. It did not hurt that Coachella Valley also boasts the exclusive Bighorn Golf Club, one of the top private residential golf clubs in the world.

But everything was not as it seemed. The business was just a front for another of Booth's Ponzi schemes. He used the business to procure short-term loans carrying extraordinarily high interest rates from wealthy individuals. The loans were ostensibly to fund the business, but when Booth received new "loans," he used those proceeds to fund an extravagant lifestyle and pay previous lenders rather than to fund business operations.

Booth needed wealthy lenders to power his scheme. The Bighorn Golf Club provided a target-rich environment, as it was "populated by millionaires and billionaires." And Booth's friend Johnny Cope was a member and a part-time resident of Bighorn. Cope allegedly gave Booth unlimited access to the Bighorn clubhouse and actively encouraged other members to invest in Booth's business. Appellant Sean McGrath alleges that in January 2018, Booth and Cope offered him one such "investment deal." McGrath bit. He

agreed to loan Booth $250,000, to be repaid in one month with 25% interest, for a total repayment of $312,500.[1]

Booth did not hide his past in securing loans like McGrath's. To the contrary, he was forthcoming about his criminal history but assured potential investors that he had changed and that the golf cart business was legitimate. Cope allegedly vouched for Booth and the golf cart business to lend "legitimacy" to the enterprise. Even though Cope often called Booth a "money launderer" around the clubhouse, the two were inseparable, "shar[ing] exotic cars, private airplanes, and a conspicuous designer bag filled with large amounts of cash, which Cope and Booth used for, among other matters, high-stakes card games in the Bighorn clubhouse." Cope assured Bighorn members, including McGrath, that Booth was trustworthy. McGrath alleges that he relied on Cope's assurances when he lent Booth money.

Booth defaulted on the $250,000 loan. But that default did not faze McGrath; instead, Booth and McGrath agreed to extend the repayment date to March and further agreed to a second loan, for $180,000 at 20% interest payable in one month, for a total repayment of $216,000. Booth then defaulted on both loans, leaving an unpaid balance owed to McGrath of $528,500. McGrath repeatedly requested repayment from Booth, who repeatedly demurred, explaining that the funds were "tied up" by his attorney "John."

---

[1] A monthly interest rate of 25% annualizes to approximately 1,355% if compounded and 304% if not compounded. For comparison, both Texas, where the suit was filed, and California, where the contract was entered, provide that interest of greater than 10% annually is generally usurious. Tex. Const. art. XVI, § 11; Cal. Const. art. XV, § 1.

McGrath was not the only Bighorn member whom Booth swindled. In November 2018, a local media outlet, the *Desert Sun*, published an article about Booth, detailing his criminal past and the lawsuits filed against him by investors, including several Bighorn members, who had lent money for his golf cart business. After the article's publication, Cope nonetheless continued to vouch for Booth and allow him access to Bighorn. Cope allegedly continued to assure McGrath that he would be repaid as soon as attorney "John" released the funds. Based on his relationship with Cope, McGrath discounted the *Desert Sun*'s reporting on Booth's exploits and instead waited for repayment once "John" released his hold on the money. McGrath asserts that at the time, he had no suspicion that Booth's and Cope's conduct was anything more sinister than Booth's failure to repay the loans. He maintains that he had no reason to believe that he had fallen victim to a Ponzi scheme, or that Cope was involved.

McGrath alleges that he discovered Booth's fraud in 2020, roughly two years later, but that he remained unaware of Cope's complicity in the scheme. McGrath sued Booth in federal court in Massachusetts in September 2020. Booth evaded service and did not appear. In December 2022, McGrath moved for a default judgment against Booth, which the court granted, entering a judgment for $3,107,195.43 in damages.

Meanwhile, in February 2022, McGrath allegedly first learned of Cope's involvement in the Ponzi scheme—including his allegedly opening a New Mexico bank account to hold the scheme's "investment" proceeds—after speaking with another Bighorn member. McGrath did not act on this information at the time.

In September 2023, over five years after Booth defaulted on the loans and almost three years after Cope had died, McGrath sued Cope's estate (the Estate), its former executor, J.P. Cope, and its current executrix, Kyleigh

Brewer, in federal district court.  McGrath alleged claims for fraud, civil conspiracy to commit fraud, and violations of the New Mexico Unfair Practices Act against the Estate and claims for fraudulent transfer and civil conspiracy to commit fraudulent transfer against all the Defendants.  The district court dismissed McGrath's fraud and civil conspiracy claims as barred by Texas's four-year statute of limitations for fraud claims.

McGrath now appeals.  He first contends that the district court should have applied New Mexico law.[2]  On substance, he asserts that the discovery rule and fraudulent concealment doctrine tolled the statute of limitations as to his claims and that, in any event, the district court should have granted him leave to amend his complaint.

## II.

"A district court's grant of a motion to dismiss is reviewed *de novo*." *Budhathoki v. Nielsen*, 898 F.3d 504, 507 (5th Cir. 2018).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff

---

[2] Despite filing suit in Texas, and the fact that nearly all relevant conduct occurred in California, McGrath argues that New Mexico law should apply.  However, he concedes that New Mexico law does not conflict with Texas law on the issues presented.  Rather, he contends that the district court's application of Texas law conflicts with New Mexico law, which devolves to an argument that the district court erred in applying the rule that McGrath agrees both Texas and New Mexico would use.  Because McGrath does not articulate any true conflict of law between the jurisdictions, no choice-of-law analysis is necessary. *See Schneider Nat'l Transp. v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002) ("If the laws of the states do not conflict, then no choice-of-law analysis is necessary." (citation omitted)); *Flagship Credit Corp. v. Indian Harbor Ins. Co.*, 481 F. App'x 907, 910 (5th Cir. 2012) (per curiam) ("The party asserting a conflict with Texas substantive law must demonstrate the existence of a true conflict.").

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[W]hile allegations may be based upon information and belief, 'the complaint must set forth a factual basis for such belief.'" *U.S. ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 329 (5th Cir. 2003) (quoting *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)). "Nevertheless, 'we do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Arias-Benn v. State Farm Fire & Cas. Ins. Co.*, 495 F.3d 228, 230 (5th Cir. 2007) (citation modified) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

## III.

The district court dismissed McGrath's fraud claims as barred by Texas's four-year statute of limitations for fraud. McGrath contends that this was error because both Texas's discovery rule and fraudulent concealment doctrine tolled the statute of limitations. And to the extent that there is any question whether either the discovery rule or Cope's fraudulent concealment serves to salvage his claims, McGrath asserts that those determinations are not properly made via a motion to dismiss.

### A.

Texas's statute of limitations requires fraud claims to be brought no more than "four years after the day the cause of action accrues." Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(4). "Generally, a claim accrues when the defendant's wrongful conduct causes the claimant to suffer a legal injury." *Berry v. Berry*, 646 S.W.3d 516, 523 (Tex. 2022). A legal injury occurs "when facts come into existence that authorize a party to seek a judicial remedy." *Id.* (quoting *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003)). "This is true 'even if the fact of injury is not discovered until later, and even if all resulting damages have not yet

occurred.'" *Marcus & Millichap Real Est. Inv. Servs. of Nev., Inc. v. Triex Tex. Holdings, LLC*, 659 S.W.3d 456, 461 (Tex. 2023) (per curiam) (quoting *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)).  Under Texas law, a civil conspiracy claim accrues "at the same time as the tort claim against the primary tortfeasor." *Agar Corp., Inc. v. Electro Cirs. Int'l, LLC*, 580 S.W.3d 136, 144 (Tex. 2019).  Therefore, our analysis focuses on McGrath's knowledge of his wrongfully caused injuries, not his knowledge of any particular tortfeasor. *See id.*; *Childs v. Haussecker*, 974 S.W.2d 31, 40 (Tex. 1998) ("[A]ccrual is tolled until a claimant discovers or in the exercise of reasonable diligence should have discovered the injury and that it was likely caused by the wrongful acts of another.  But once these requirements are satisfied, limitations commences, even if the plaintiff does not know the exact identity of the wrongdoer.") .

Taking McGrath's allegations as true, his claims accrued in February 2018, when Booth defaulted on the first loan.  That is when McGrath was first injured by Booth's and Cope's alleged wrongful conduct through Booth's failure to repay the debt and McGrath's resulting financial loss.  *See Childs*, 974 S.W.2d at 40.  Even looking to Booth's second default, McGrath's claims accrued by March 2018 when that occurred.  Because McGrath did not file his complaint until September 2023, over five years later, his claims fall outside the four-year statute of limitations.

**B.**

Because his cause of action accrued by February or March 2018, McGrath seeks refuge in two exceptions to the statute of limitations:  the discovery rule and the fraudulent concealment doctrine.  He contends that they each worked to toll the limitations period in this case.  However, neither exception "extend[s] the limitations period indefinitely." *Triex*, 659 S.W.3d at 464 (quoting *Valdez v. Hollenbeck*, 465 S.W.3d 217, 230 (Tex. 2015)).  And

because the statute of limitations applies to causes of action rather than defendants, the question is when the limitations period lapsed as to the claims themselves, not as to a particular defendant. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.004; *Agar*, 580 S.W.3d at 142 ("The Legislature has defined different statutes of limitations for various claims . . . . The scheme thus assigns . . . limitations based on the type of wrong," rather than "for parties who may be liable through different theories for the same wrong."). We examine each doctrine's applicability in turn.

**1.**

"The discovery rule is a 'narrow exception' to the legal injury rule that 'defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action.'" *Triex*, 659 S.W.3d at 461 (quoting *Berry*, 646 S.W.3d at 524). "Applications of the rule 'should be few and narrowly drawn.'" *Berry*, 646 S.W.3d at 524 (quoting *S.V.*, 933 S.W.2d at 25). The rule does not toll the statute of limitations "until a claimant learns of actual causes and possible cures." *Triex*, 659 S.W.3d at 462 (quoting *PPG Indus., Inc. v. JMB/Hous. Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 93 (Tex. 2004). "Nor does it defer accrual until the plaintiff knows the *specific nature of each wrongful act* that may have caused the injury, *or the exact identity of the wrongdoer*." *Id.* (citations and quotation marks omitted) (emphases added). Instead, "the party claiming fraud and/or misrepresentation must exercise due diligence to discover the alleged fraud and cannot close his eyes and simply wait for facts supporting such a claim to come to his attention." *Martinez Tapia v. Chase Manhattan Bank, N.A.*, 149 F.3d 404, 409 (5th Cir. 1998).

McGrath contends that when he could have discovered the factual basis for his claims and whether he exercised reasonable diligence in doing so are questions for the jury—or at the very least, should survive a threshold

motion to dismiss. But federal courts may dismiss claims under Federal Rule of Civil Procedure 12(b)(6) when the pleadings negate any basis for "tolling or the like." *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 758 (5th Cir. 2015) (quoting *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003)). Dismissal is proper, *e.g.*, when a pleading "dispels any notion that the equitable [tolling] principles identified by [p]laintiffs would be available to save their claims." *Id.* at 764. Here, the discovery rule cannot save McGrath's claims because his complaint effectively pleads that he knew "the facts giving rise to the cause of action," *Triex*, 659 S.W.3d at 461 (quoting *Berry*, 646 S.W.3d at 524), as early as February 2018 and no later than March 2018.

Further, while reasonable diligence is generally a question of fact, courts may determine as a matter of law whether diligence would have uncovered a wrong. *E.g.*, *Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 58 (Tex. 2015) (citing *Est. of Stonecipher v. Est. of Butts*, 591 S.W.2d 806, 809 (Tex. 1979)). In Texas, "[k]nowledge of facts that could cause a reasonably prudent person to make an inquiry that would lead to discovery of the cause of action is in the law equivalent to knowledge of the cause of action for limitation purposes." *Town of Dish v. Atmos Energy Corp.*, 519 S.W.3d 605, 613 (Tex. 2017) (citing *Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 436 (Tex. App.—Fort Worth 1997, pet. denied)); *see also Triex*, 659 S.W.3d at 462–63. The "question is whether the injury is 'the type of injury that could be discovered through the exercise of reasonable diligence.'" *Triex*, 659 S.W.3d at 461 (quoting *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 66 (Tex. 2011)).

The Supreme Court of Texas has held that a breach of contract or default can give a plaintiff knowledge sufficient to negate the discovery rule. *E.g.*, *id.* at 464 ("[A]t the time [the lessee] breached the lease, [plaintiff] learned of facts that, if pursued, would have led to the discovery of

[defendant]'s alleged misrepresentations."); *see also Wise v. Anderson*, 359 S.W.2d 876, 879 (Tex. 1962) ("[K]nowledge that [the breach occurred] 'was knowledge of facts that would cause a reasonably prudent person to make inquiry which would lead to a discovery of the fraud.' Such knowledge is in law knowledge of the fraud itself." (quoting *Glenn v. Steele*, 61 S.W.2d 810, 810 (1933))). Indeed, "[t]he rule in [past] cases was, as it is in this one, that accrual occurs when the plaintiff knew or should have known of the wrongfully caused injury," regardless of whether he knew every party involved or "the specific nature of each wrongful act." *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 749 (Tex. 1999) (holding that the discovery rule did not save Deceptive Trade Practices Act claim); *see also Triex*, 659 S.W.3d at 462.

In *Triex*, the plaintiff purchased a building and entered a twenty-year leaseback agreement with the building's prior owner. The parties retained the defendant as a broker. *Triex*, 659 S.W.3d at 460. To facilitate the sale of the building, the broker assured the plaintiff that it "'was a sure-fire and financially sound investment,' and that 'rent would be coming in every month without any issues or risk.'" *Id.* at 463. But the prior-owner-turned-lessee later defaulted on the "sure-fire" lease. *Id.* Three years later, plaintiff sued the lessee. *Id.* at 460. From deposition testimony adduced a year into the litigation, the plaintiff began to suspect that the broker had misrepresented the soundness of the transactions. *Id.* The plaintiff sued the broker for breach of fiduciary duty and fraud, "more than more than four years after [the prior owner] breached the lease and more than eight years after [the defendant] brokered the sale." *Id.*

The Supreme Court of Texas held that the *Triex* plaintiff "knew or should have known that something was amiss" once the default occurred. *Id.* at 463 (quoting *Berry*, 646 S.W.3d at 525). Specifically, given the broker's assertions that "'this was a sure-fire and financially sound investment,' and

that 'rent would be coming in every month without any issues or risk[,]'" reasonable diligence would have led the plaintiff to investigate the situation further after the initial default. *Id.* at 462–63. So, "[h]ad [the plaintiff] exercised reasonable diligence, it would have discovered [the broker]'s allegedly wrongful acts" much earlier. *Id.* The court discounted the plaintiff's allegation that it was "unaware of the actions and omissions of [the defendant] and had no reason to know or believe of its injuries until [outside the initial four-year window]" and instead pegged the limitations period to when the plaintiff knew about its wrongfully caused injuries, *i.e.*, the prior owner's lease default. *Id.* at 460; *see also KPMG*, 988 S.W.2d at 747–49 (holding that limitations had run when plaintiff knew he had been wrongfully injured by one party, even though plaintiff did not know about another party's involvement).

*Triex* maps onto this case. McGrath knew he was injured when Booth defaulted on his loans, first in February 2018, and again in March 2018, totaling $430,000 in principal plus $98,500 in interest. McGrath knew at the time that Booth was a convicted fraudster, and he learned soon enough that other Bighorn members had been suckered as well. Beyond all that, though, McGrath had also relied on Cope's repeated assurances vouching for Booth when he initially loaned Booth the money. And McGrath knew that Booth and Cope were inseparable and "shared exotic cars, private airplanes, and a conspicuous designer bag filled with large amounts of cash, which Cope and Booth used for . . . high-stakes card games in the Bighorn clubhouse." Given all this, McGrath's knowledge that he was injured by Booth's defaults "is in [Texas] law knowledge of the fraud itself," as to both Booth *and Cope*. *Wise*,

No. 24-50335

359 S.W.2d at 879; *see also KPMG*, 988 S.W.2d at 749; *Triex*, 659 S.W.3d at 462–63.[3]

At the least, and regardless of *Triex*, McGrath's knowledge of the above facts was sufficient to "cause a reasonably prudent person to make inquiry which would lead to a discovery of the fraud." *Wise*, 359 S.W.2d at 879 (quoting *Glenn*, 61 S.W.2d at 810). McGrath did not make such inquiry, at least not in a timely fashion. McGrath implies that his ability to make such an inquiry was limited because he did not spend significant time at Bighorn during the COVID-19 pandemic in 2020 and 2021 (two years after Booth's defaults and the *Desert Sun* article), so he did not learn about Cope's involvement until 2022 when another Bighorn member-victim informed him. Yet he offers no reason why he could not have inquired within the limitations period, given what he knew at the time of Booth's defaults in 2018.[4] *Cf. Agar*, 580 S.W.3d at 142 (Statutes of limitations "do[] not assign different limitations for parties who may be liable through different theories for the same wrong."); *Childs v. Haussecker*, 974 S.W.2d 31, 40 (Tex. 1998) (When a plaintiff "discover[s] the injury and that it was likely caused by the wrongful acts of another[,] . . . limitations commences, even if the plaintiff does not

---

[3] This surrounding factual context should have led McGrath to infer that, or at least to take steps to investigate whether, Booth's defaults were the product of fraud—and whether and to what extent Cope was involved—making this case unlike *In re Estate of Ewers*, 695 S.W.3d 603, 623–24 (Tex. App.—Houston [1st Dist.] 2024, no pet.) (opinion on rehearing).

[4] McGrath asserts that "[a]t the earliest, [he] *could* have learned about Cope's involvement in or about August of 2020, when he retained counsel." But this court need "not accept as true conclusory allegations" such as this. *Arias-Benn*, 495 F.3d at 230 (quoting *Plotkin*, 407 F.3d at 696). Besides, even crediting McGrath's allegation, he provides no explanation why he could not have retained counsel well sooner than two-and-a-half years after he lost over $528,500 due to Booth's defaults—or why obtaining counsel was even necessary to uncover Cope's involvement in the scheme. *Cf. Town of Dish*, 519 S.W.3d at 613.

know the exact identity of the wrongdoer."). The discovery rule is therefore unavailing to save McGrath's claims.

**2.**

McGrath also contends that the fraudulent concealment doctrine tolls the statute of limitations in this case. The doctrine is akin to the discovery rule, though "[u]nlike the discovery rule exception, deferral in the context of fraud or concealment resembles equitable estoppel. Fraudulent concealment estops the defendant from relying on the statute of limitations as an affirmative defense to the plaintiff's claim." *Triex*, 659 S.W.3d at 463 (citation modified) (quoting *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996)). As with the discovery rule, it "does not extend the limitations period indefinitely." *Id.* at 464 (quoting *Valdez*, 465 S.W.3d at 230).

The fraudulent concealment doctrine focuses on whether the defendant concealed the plaintiff's injury, such that the plaintiff could not have known he was wrongfully injured. *Compare id.* at 463–64 (declining to apply the doctrine because plaintiff knew of its wrongfully caused injury within the limitations period), *and KPMG*, 988 S.W.2d at 750 (holding that the doctrine did not toll limitations where plaintiff "discovered its injury more than two years[5] before it sued [the defendant]"), *with Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1983) (applying fraudulent concealment doctrine to toll a claim arising from a doctor's leaving a needle inside a patient and then failing to inform the patient).

For largely the same reasons that the discovery rule does not salvage McGrath's claims, he finds no refuge in the fraudulent concealment doctrine

---

[5] *KPMG* featured a two-year statute of limitations. 988 S.W.2d at 750.

either. According to the allegations in his complaint, McGrath had actual knowledge that he was wrongfully injured in February and March 2018 because of Booth's defaults, regardless of Booth's and Cope's assurances about repayment funds being delayed by "John," the attorney. Fraudulent concealment still only tolls a statute of limitations "until 'a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to the discovery of the concealed cause of action.'" *Triex*, 659 S.W.3d at 464 (quoting *Valdez*, 659 S.W.3d at 230). As discussed, McGrath had knowledge of such facts as early as spring 2018 when Booth defaulted on his payments. McGrath thus discovered his injury and knew the "facts forming the basis of [his] claim" more than four years before he sued Cope. *KPMG*, 988 S.W.3d at 750. And again, had McGrath made reasonable inquiry based on what he knew within the limitations period, he could have discovered Cope's alleged complicity in the scheme.

## C.

McGrath points to several allegations in his complaint that he contends, when taken as true, support tolling the statute of limitations. However, they do not change the calculus.

For example, McGrath's complaint alleges that "[d]espite the publication of the [*Desert Sun*] article, Cope continued to make false assurances to McGrath that his loans would be repaid in the late fall and winter of 2018." McGrath avers he "reasonably believed, based on his relationship with Cope, based on Cope's standing in the community, and based on Cope and Booth's express representations, that the only thing standing in the way of repayment of his debt was an attorney named 'John.'" However, despite Cope's assurances to McGrath that he would be repaid, and crediting McGrath's belief that "John" had tied up his money, the

14

crucial facts remain: McGrath was defrauded through loans on which Booth defaulted in early 2018; he thereby lost almost a half a million dollars plus interest; and his loss was traceable at least in part to his reliance on Cope's assurances of Booth's integrity. Coupled with McGrath's awareness that Booth and Cope were enmeshed in each other's activities, these alleged facts show that McGrath was injured, and he at least should have investigated the possibility that the injury was wrongfully caused—and by whom.[6] These facts were enough to start the limitations period.

## IV.

Finally, McGrath alleges that the district court erred in denying him leave to amend. "A district court's denial of a motion for leave to amend a pleading is subject to review for abuse of discretion. The trial court acts within its discretion in denying leave to amend where the proposed amendment would be futile because it could not survive a motion to dismiss." *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (internal citations omitted).

McGrath does not proffer anything he could add via amendment that would alter the foregoing analysis. He states that "he would have amended his pleading to include, for example, the additional steps he took to verify the legitimacy of Booth's business—such as visiting his showrooms and questioning Bighorn luminaries . . . named in the *Desert Sun* article, who reassured him of Booth's business'[s] authenticity." But those additions do not change the fact that McGrath knew Booth wrongfully injured him by defaulting on the loans and he at least should have known that Cope's

---

[6] As discussed *supra* note 3, McGrath's allegation that he could not have known Cope was involved until 2020 is immaterial because in Texas, a claim against a conspirator accrues "at the same time as the tort claim against the primary tortfeasor." *Agar*, 580 S.W.3d at 144; *see also KPMG*, 988 S.W.2d at 749.

assurances contributed to his injury. That alone is enough for the limitations period to commence. It mattered not whether Booth had been running a legitimate business; he still breached a contract, costing McGrath $430,000 plus interest, and McGrath had actual knowledge both that the breaches occurred and of the backdrop of Booth and Cope's close association.

\*    \*    \*

The discovery rule does not "defer accrual until the plaintiff knows 'the specific nature of each wrongful act that may have caused the injury.'" *Triex*, 659 S.W.3d at 462 (quoting *KPMG*, 988 S.W.2d at 749). And Booth's and Cope's alleged fraudulent concealment of their scheme does not excuse McGrath's lack of diligence in uncovering it. *See id.* at 463–64; *KPMG*, 988 S.W.2d at 749–50. From the facts McGrath pled in his complaint, his claims are therefore barred by the statute of limitations.

The judgment of the district court is

AFFIRMED.