# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
December 6, 2021

Lyle W. Cayce
Clerk

No. 21-20260

IN THE MATTER OF: MICHELL ZOLNIER

*Debtor*,

JAMES K. COLLINS, MEDICAL DOCTOR,

*Appellee*,

*versus*

MICHELL R. ZOLNIER, DOING BUSINESS AS CKC PROPERTIES, TOP STAR LEASES,

*Appellant*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:16-CV-2670

---

Before HIGGINBOTHAM, STEWART, and WILSON, *Circuit Judges*.

PER CURIAM:*

---

\* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 21-20260

This case concerns whether Debtor-Appellant Michell Zolnier's debt to Appellee Dr. James Collins is subject to discharge in bankruptcy. Dr. Collins sought to exempt the debt from discharge under either 11 U.S.C. § 523(a)(2)(A) or § 523(a)(6). After trial, the bankruptcy court held that Dr. Collins failed to prove those claims against Michell Zolnier or that he suffered damages. The district court reversed, holding that record evidence supports both of Dr. Collins's claims. Although we hold that Dr. Collins did not prove his § 523(a)(2)(A) claim, we agree with the district court's determination that the record supports the § 523(a)(6) claim. However, the district court did not consider the bankruptcy court's conclusion—with which we agree—that the debt remains dischargeable because Dr. Collins failed to substantiate his damages. Accordingly, we REVERSE the district court's decision and AFFIRM the bankruptcy court's judgment, as modified by this opinion.

## I. Facts & Procedural Background

In 2003, Michell Zolnier and her then-husband, William Zolnier, leased commercial real estate in Magnolia, Texas from Dr. Collins.[1] They used the property, commonly known as the "Big Red Barn," as a showroom for their furniture business. In 2007, the Zolniers fell behind on their rent and asked Dr. Collins for assistance. Dr. Collins agreed to work with them, and for the next two years, the Zolniers leased the Big Red Barn on a month-to-month basis, only paying "what [they] could." In 2009, the parties renewed their lease. Under the lease, which both Zolniers signed, the Zolniers agreed to pay their rent arrearage. They also offered Dr. Collins their inventory as

---

[1] Both Michell and William Zolnier participated in the district court proceedings. However, William Zolnier, who proceeded pro se below, did not appeal the district court's order. Thus, we only address Michell Zolnier's claims on appeal.

collateral to secure their debt, conveying to him a security and superior lien interest in their inventory.

Subsequently, the Zolniers did not pay their arrearage, causing Dr. Collins to sue them in state court for back rent in early 2012. Pursuant to that litigation, Dr. Collins and the Zolniers executed an agreement under Texas Rule of Civil Procedure 11 in which the Zolniers agreed not to "sell, mortgage, transfer, liquidate or distribute" any of their inventory encumbered by Dr. Collins's lien without first providing him ten days' notice. After two years of litigation, the parties attempted mediation on February 18, 2014. Settlement talks failed, however, and within hours, the Zolniers began removing inventory from the Big Red Barn. The Zolniers say they only removed items that were on consignment, awaiting delivery, or on layaway. Allegedly, they left "about $105,000 worth of merchandise" in the store. Dr. Collins, in contrast, says the Zolniers removed their entire inventory, including items encumbered by his lien, in violation of the Rule 11 agreement.

In August 2014, a Texas jury rendered a verdict against the Zolniers, awarding Dr. Collins $218,649.15 in back rent, plus interest and attorney's fees. The Zolniers filed for Chapter 7 bankruptcy a month later. In February 2015, Dr. Collins initiated an adversary proceeding against the Zolniers in bankruptcy court, seeking a declaration that their debt to him was not dischargeable under 11 U.S.C. § 523. He alleged that the Zolniers "obtained commercial rental property from" him by "actual fraud" based on an alleged fraudulent transfer and "willfully and maliciously injured" him in violation

of § 523(a)(2)(A) and § 523(a)(6), respectively.[2] Meanwhile, the Zolniers divorced in January 2016.

Dr. Collins's claims proceeded to a bench trial before the bankruptcy court in August 2016. After trial, the bankruptcy court ruled orally that the Zolniers' debt was dischargeable. Before reaching the merits, the bankruptcy court "reiterate[d] . . . for the record" that this case, as prosecuted and defended, was "just one big mess." It then summarily dismissed Dr. Collins's claim under § 523(a)(2)(A), noting that "[t]he facts don't come anywhere close to" establishing "a fraudulent transfer." As for Dr. Collins's claim for "willful and malicious injury" under § 523(a)(6), the bankruptcy court found that he failed to prove his case against Michell Zolnier because at every "critical point in the case, [the] conduct was always [William] Zolnier's, not [Michell] Zolnier's." With respect to William Zolnier, however, the bankruptcy court found that he engaged in conduct that should render his debt non-dischargeable. Even so, it ruled begrudgingly that the entire debt was dischargeable because Dr. Collins failed to prove a "critical element" of a § 523(a)(6) claim. Namely, Dr. Collins did not offer any evidence establishing the value of the encumbered property that the Zolniers allegedly absconded with. The bankruptcy court therefore rendered final judgment against Dr. Collins.

Dr. Collins appealed to the district court. Ruling from the bench, the district court found that the Zolniers were jointly liable for deliberately evading Dr. Collins's lien since they were both "partners at law in Texas" actively involved in the business. The district court then stated that, in rejecting Dr. Collins's claims, the bankruptcy court erroneously assumed the

---

[2] Dr. Collins also asserted that the debt was not dischargeable under 11 U.S.C. § 523(a)(4), but he abandoned that claim at trial.

Zolniers behaved innocently. For that reason, the district court reversed and vacated the bankruptcy court's judgment. It later issued an order to that effect. Citing *Husky International Electronics, Inc. v. Ritz*, 578 U.S. 356, 360 (2016), the district court ruled that the Zolniers' debt was non-dischargeable because they committed "actual fraud" by wrongfully conveying encumbered property. Michell Zolnier now asks us to decide whether the district court erred in reversing the bankruptcy court.

## II. Standard of Review

"We review the decision of a district court, sitting as an appellate court, by applying the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court." *In re Entringer Bakeries, Inc.*, 548 F.3d 344, 348 (5th Cir. 2008) (quoting *In re Gerhardt*, 348 F.3d 89, 91 (5th Cir. 2003)). "Thus, we review the bankruptcy court's findings of fact for clear error and its legal conclusions de novo." *In re Goodrich Petroleum Corp.*, 894 F.3d 192, 196 (5th Cir. 2018).

## III. Discussion

On appeal, Michell Zolnier argues that the bankruptcy court correctly held that her debt to Dr. Collins was dischargeable. She contends that her conduct did not constitute "actual fraud" under § 523(a)(2)(A) or "willful and malicious injury" under § 523(a)(6), and that to the extent William Zolnier's conduct falls under either provision, culpability for that conduct cannot be imputed to her. We address each contention in turn.

*A. Section 523(a)(2)(A)*

Section 523(a)(2)(A) excludes from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial

condition." 11 U.S.C. § 523(a)(2)(A). Generally, to prove "actual fraud" under § 523(a)(2)(A), the creditor must show that the debtor made a false representation with intent to deceive the creditor and that the creditor "actually and justifiably relied on the representation," sustaining "a loss as a proximate result." *Saenz v. Gomez*, 899 F.3d 384, 394 (5th Cir. 2018).

*Husky* held, however, that "actual fraud" as used in § 523(a)(2)(A) also "encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." 578 U.S. at 359. As the Court explained, the term "actual fraud" has common law origins and "denotes any fraud that 'involv[es] moral turpitude or intentional wrong.'" *Id.* at 360 (alteration in original) (quoting *Neal v. Clark*, 95 U.S. 704, 709 (1878)). In other words, "anything that counts as 'fraud' and is done with wrongful intent is 'actual fraud.'" *Id.* The Court recognized that "[a]lthough 'fraud' connotes deception or trickery generally, the term is difficult to define more precisely." *Id.* Yet it had no trouble concluding that "fraud" at least includes "a debtor's transfer of assets that . . . impairs a creditor's ability to collect the debt." *Id.*

Dr. Collins argues that the Zolniers "fraudulently transferred [his] secured property" to prevent him from collecting his debt within the meaning of § 523(a)(2)(A), as interpreted in *Husky*. He emphasizes that while he and the Zolniers were mediating their case, the Zolniers were simultaneously "orchestrat[ing] the complete conversion of Dr. Collins's secured assets in violation of" the lease, Rule 11 agreement, and "all morals and justice." He thus concludes that the bankruptcy court erred when it held that the facts were insufficient to establish a fraudulent transfer because this "case is *Husky* on steroids."

"Fraudulent conveyances typically involve 'a transfer to a close relative, a secret transfer, a transfer of title without transfer of possession, or

grossly inadequate consideration.'" *Husky*, 578 U.S. at 361 (quoting *BFP v. Resol. Tr. Corp.*, 511 U.S. 531, 541 (1994)). Under Texas law, the elements of fraudulent transfer include "(1) a creditor; (2) a debtor; (3) the debtor *transferred* assets shortly before or after the creditor's claim arose; (4) with actual intent to hinder, delay, or defraud any of the debtor's creditors." *In re Life Partners Holdings, Inc.*, 926 F.3d 103, 117 (5th Cir. 2019) (emphasis added). Texas law defines "transfer" to encompass "every mode . . . of disposing of or parting with an asset or an interest in an asset," including "payment of money, release, lease, and creation of a lien or other encumbrance." Tex. Bus. & Com. Code Ann. § 24.002(12). "The essence of a transfer is the relinquishment of a valuable property right[.]" *Hometown 2006-1 1925 Valley View, L.L.C. v. Prime Income Asset Mgmt., L.L.C.*, 847 F.3d 302, 308 (5th Cir. 2017) (alteration omitted) (quoting *In re Commodity Merchs., Inc.*, 538 F.2d 1260, 1263 (7th Cir. 1976)).

Although Dr. Collins says the Zolniers fraudulently transferred secured assets to avoid his lien, neither the record nor law support that conclusion. To be sure, the Zolniers intentionally sought to hinder Dr. Collins's collection of his collateral. But because there is no evidence that the Zolniers disposed of or parted with those assets, Dr. Collins failed to prove a "transfer," which is an essential element of a fraudulent transfer claim. *See Life Partners Holding*, 926 F.3d at 117.[3] *Husky* does not require otherwise despite its holding that "actual fraud" in § 523(a)(2)(A) covers "forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." 578 U.S. at 359. In *Husky*, it was undisputed

---

[3] Although the Zolniers may have literally physically "conveyed" or "transferred" secured property from one location to another to evade Dr. Collins's lien, holding that this conduct was a "fraudulent transfer" constituting "actual fraud" under § 523(a)(2)(A) would be inconsistent with the principle that "[e]xceptions to dischargeability should be construed in favor of the debtor." *In re Quinlivan*, 434 F.3d 314, 318 (5th Cir. 2005).

that the director and partial owner of a corporate debtor "drained [his company] of assets it could have used to pay its debts to creditors . . . by transferring large sums of . . . funds to other entities [the director] controlled." *Id.* at 358. In other words, there was no question that the director transferred assets. Dr. Collins, in contrast, failed to show that the Zolniers similarly "dispos[ed] of or part[ed] with an asset or an interest in an asset." TEX. BUS. & COM. CODE ANN. § 24.002(12). We therefore agree with the bankruptcy court's determination that the facts fall short of a fraudulent transfer.

In any event, even if the Zolniers had engaged in a fraudulent transfer scheme, Dr. Collins's claim would fail because he "has not produced any facts to suggest that [they] *obtained* a debt from [their] alleged fraud," as § 523(a)(2)(A) requires. *In re Green*, 968 F.3d 516, 521 (5th Cir. 2020) (citing *Husky*, 578 U.S. at 365). To review, for a debt to be excluded from discharge under § 523(a)(2)(A), it must be, among other things, "*obtained by* . . . false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A) (emphasis added). The Court in *Husky* observed that "[i]t is of course true that the transferor does not 'obtain' debts in a fraudulent conveyance." *Husky*, 578 U.S. at 356 (alteration omitted). Instead, only "the recipient of the transfer . . . can 'obtain' assets 'by' his or her participation in the fraud." *Id.* (alteration omitted). Here, to the extent any asset transfer occurred, the Zolniers were the transferors, not the recipients. "Section 523(a)(2)(A) is thus inapplicable." *Green*, 968 F.3d at 521 n.13.

### B. Section 523(a)(6)

Section 523(a)(6) bars discharge of a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). "[A]n injury is 'willful and malicious' where there is either an objective substantial certainty of harm or a subjective motive to

cause harm." *In re Miller*, 156 F.3d 598, 606 (5th Cir. 1998). "This encompasses the wrongful sale or conversion of encumbered property by the debtor." *In re Modicue*, 926 F.2d 452, 453 (5th Cir. 1991). The bankruptcy and district court agreed that at minimum William Zolnier's conduct satisfied § 523(a)(6).[4] Moreover, the bankruptcy court expressly found that William Zolnier improperly took property subject to Dr. Collins's lien and that "[h]e knew it was wrong." Indeed, William Zolnier admitted to the district court that he understood it was wrong to convert the collateral regardless of whether it was consigned or paid for.

The bankruptcy and district courts reached different conclusions regarding Michell Zolnier's culpability. As to this issue, the district court held that the Zolniers, as business partners, were jointly responsible for injuring Dr. Collins. The bankruptcy court, in contrast, found that Michell Zolnier was not culpable because at every "critical point in the case, [the] conduct was always [William] Zolnier's, not [Michell] Zolnier's." The bankruptcy court's finding cannot be disturbed unless it is "clearly erroneous" and leaves this court "with the definite and firm conviction that a mistake has been made." *Saenz*, 899 F.3d at 395 (quoting *Otto Candies, L.L.C. v. Nippon Kaiji Kyokai Corp.*, 346 F.3d 530, 533 (5th Cir. 2003)).

The parties disagree on whether evidence supports the bankruptcy court's finding. Michell Zolnier cites her own testimony that she effectively

---

[4] The district court observed that the bankruptcy court characterized the Zolniers' removal of inventory from the Big Red Barn as "an innocent business-as-usual transfer of the stock." The district court deemed that finding erroneous, observing that "there is nothing about [the Zolniers' conduct] that [qualifies as] customary, usual, standard, ordinary business practices. [William Zolnier] packed it up and ran off with it." It is clear from the record, however, that the bankruptcy court did not consider William Zolnier's conduct innocent and instead found that he "improperly impaired the security interest held by Dr. Collins."

stopped working at the furniture store in 2011, after she separated from her husband. Around the same time, William Zolnier removed her from the company's bank account. Dr. Collins responds that, contrary to the bankruptcy court's finding, record evidence proves Michell Zolnier's culpability. Specifically, evidence shows that she signed the 2009 lease agreement conveying Dr. Collins a security interest in the store's inventory. Moreover, Michell Zolnier, through her lawyer and with William, agreed not to remove any inventory from the Big Red Barn outside of the ordinary course of business without notifying Dr. Collins. The Zolniers then proceeded to empty their store, without providing notice, immediately after mediation failed.

We agree with the district court's conclusion that Michell Zolnier is culpable for injuring Dr. Collins. Although Michell Zolnier testified that she and William only removed "stuff that was already purchased" and therefore excluded from the scope of their agreements with Dr. Collins, the bankruptcy court found otherwise when it observed "that Mr. Zolnier did improperly take property that was subject to [Dr. Collins's] liens." It is undisputed that Michell Zolnier actively participated in that conduct. Because Michell Zolnier does not identify any evidence rendering the bankruptcy court's finding clearly erroneous, we are bound by it. *See Saenz*, 899 F.3d at 395. Thus, Michell Zolnier, like William, willfully and maliciously injured Dr. Collins under § 523(a)(6) by converting his collateral. *See Modicue*, 926 F.2d at 453. To the extent the bankruptcy court concluded otherwise, it clearly erred.[5] We therefore affirm the district court as to this issue.

---

[5] Because we conclude that Michell Zolnier's conduct independently satisfied § 523(a)(6), we need not decide whether (as the district court held) William Zolnier's conduct can be imputed to her or instead whether (as the bankruptcy court held) it cannot.

*C. Damages*

Even still, Michell Zolnier's debt may be discharged under § 523(a)(6) if the bankruptcy court correctly concluded that Dr. Collins failed to prove the value of the taken property. "Section 523(a)(6) is based on tort principles rather than contract" and is "designed to compensate the injured party for the injury suffered." *Modicue*, 926 F.2d at 453. Thus, "the appropriate measure for non-dischargeability under § 523(a)(6) is an amount equal to the injury caused by the debtor rather than any other sum owed by the debtor on a contractual basis." *Id.* In *Modicue*, we explained that the injury to the creditor was "the loss of [converted] collateral securing the [debtors'] indebtedness to which" the creditor had priority. *Id.* "Therefore, under § 523(a)(6), [the creditor was] entitled to the value of the collateral denied it by the [debtors'] wrongful actions." *Id.*

Applying that principle here, we conclude that the bankruptcy court rightly determined that Dr. Collins was entitled to the value of the converted collateral when the Zolniers removed it from the Big Red Barn. That is when the conversion injuring Dr. Collins occurred. The bankruptcy court then pointed out that Dr. Collins failed to prove his § 523(a)(6) claim because he offered no evidence of the value of the collateral at that time. The bankruptcy court was at pains to explain that although this fact "bother[ed] [it] a tremendous amount," it had "no alternative but to find that . . . Dr. Collins as [a] creditor has failed to meet his burden" because "there is no record of what was taken." The bankruptcy court noted that it would have been amenable to calculating the collateral's value "us[ing] a number close in time" or tax records from the year the conversion occurred. But Dr. Collins presented "simply nothing" on this issue at trial. On appeal, the district court did not consider this potential defect in Dr. Collins's case.

No. 21-20260

Likewise, before this court, Dr. Collins has not identified any record evidence establishing the value of the converted collateral. Rather, Dr. Collins says he has satisfied his burden under § 523(a)(6) because he possessed "a quantifiable state court judgment for rent arrearage due by the Zolniers" and "the Zolniers converted all the encumbered property in the leased location and tendered Dr. Collins nothing from the proceeds." This is insufficient. As to the Zolnier's failure to pay their rent arrearage, that is not the type of injury § 523(a)(6) is designed to address. *See Modicue*, 926 F.2d at 453; *see also* 4 Collier on Bankruptcy ¶ 523.12 (16th 2021) ("Section 523(a)(6) generally relates to torts and not to contracts."). Nor is it germane to Dr. Collins's § 523(a)(6) claim, which is for the conversion of his collateral. As to the conversion, Dr. Collins's assertion that the Zolniers failed to compensate him does not address the defect the bankruptcy court identified in his case. Namely, Dr. Collins has not pointed to any evidence relating to the value of the encumbered property at the time of conversion. We thus agree with the bankruptcy court that Dr. Collins failed to prove his case and therefore affirm its judgment.

## V. Conclusion

In summary, although the bankruptcy court correctly determined that Michell Zolnier did not commit "actual fraud" under § 523(a)(2)(A), it erred to the extent it found that she did not willfully and maliciously injure Dr. Collins under § 523(a)(6). However, we agree with the bankruptcy court that Dr. Collins failed to prove damages as to his § 523(a)(6) claim. Accordingly, we REVERSE the decision of the district court and AFFIRM the judgment of the bankruptcy court, as modified by this opinion.